No. 25-13258

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

———————————

MICHAEL BALUJA,

*Plaintiff-Appellant*,

v.

CITY OF CORAL CABLES,

*Defendant-Appellee*.

———————————

On Appeal from the United States District Court
for the Southern District of Florida
No. 1:24-cv-23470-JEM (Hon. Jose E. Martinez)

———————————

**APPELLANT'S OPENING BRIEF**

———————————

Andrew T. Tutt
John V. Hoover
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999
jack.hoover@arnoldporter.com

*Counsel for Appellant Michael Baluja*

No. 25-13258, *Michael Baluja v. City of Coral Gables*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1(a)(2), Appellant Michael Baluja, through undersigned counsel, hereby submits this Certificate of Interested Persons and Corporate Disclosure Statement.

Baluja states that he is not a corporation, does not have a parent corporation, nor has he issued shares or debt securities to the public. Baluja is not a subsidiary or affiliate of any publicly owned corporations.

I hereby certify that the following have an interest in the outcome of this appeal:

1.  Arnold & Porter Kaye Scholer LLP, *Counsel for Plaintiff-Appellant*

2.  Baluja, Michael, *Plaintiff-Appellant*

3.  City of Coral Gables, *Defendant-Appellee*

4.  Hoover, John V., *Counsel for Plaintiff-Appellant*

5.  Klock, Susan E., *Counsel for Plaintiff-Appellant*

6.  Martinez, Honorable Jose E., *District Judge*

7.  Rasco Klock Perez & Nieto, P.L., *Counsel for Plaintiff-Appellant*

8.  Reid, Honorable Lisette M., *Magistrate Judge*

9.  Ruiz, Fabian A., *Counsel for Defendant-Appellee*

10. Ruiz Trial Law, PLLC, *Counsel for Defendant-Appellee*

11. Tutt, Andrew T., *Counsel for Plaintiff-Appellant*

C-1 of 2

No. 25-13258, *Michael Baluja v. City of Coral Gables*

Dated: November 26, 2025

Respectfully submitted,

/s/ *John V. Hoover*
Andrew T. Tutt
John V. Hoover
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999
jack.hoover@arnoldporter.com

*Counsel for Appellant Michael Baluja*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Eleventh Circuit Rule 28-1(c), Appellant Michael Baluja requests oral argument. Oral argument would aid the Court's decision process. Fed. R. App. P. 34(a)(2)(C). This appeal presents a question of first impression in this Circuit: whether the Supreme Court's decision in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024), applies to claims under the Uniformed Services Employment and Re-employment Rights Act of 1994.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
　　　DISCLOSURE STATEMENT............................................................C-1

STATEMENT REGARDING ORAL ARGUMENT .......................................i

TABLE OF CONTENTS.................................................................................1

TABLE OF AUTHORITIES ..........................................................................2

JURISDICTIONAL STATEMENT ................................................................8

STATEMENT OF ISSUES ............................................................................9

INTRODUCTION .........................................................................................10

STATEMENT OF THE CASE......................................................................11

　　A.　Legal Background...........................................................................11

　　B.　Factual Background.........................................................................15

　　C.　Procedural Background ...................................................................20

SUMMARY OF ARGUMENT .....................................................................24

STANDARD OF REVIEW ...........................................................................26

ARGUMENT.................................................................................................26

I.　　BALUJA HAS ARTICLE III STANDING ..................................26

　　A.　Baluja Has Standing to Bring a USERRA Claim............................27

　　B.　The District Court's Standing Analysis Was Erroneous ...............30

II.　　BALUJA STATED A CLAIM FOR EMPLOYMENT
　　　DISCRIMINATION AND UNLAWFUL EMPLOYMENT
　　　PRACTICES ...............................................................................33

　　A.　Coral Gables Engaged in Military Status Discrimination By Taking
　　　　Adverse Employment Action Against Baluja Because of His Military
　　　　Status...........................................................................................34

　　B.　Coral Gables Violated Its Reemployment Obligations By Failing to
　　　　Properly Reemploy Baluja Following Absence from Employment.............46

　　C.　Coral Gables' Leave Policies Independently Violate USERRA....................49

CONCLUSION.............................................................................................51

CERTIFICATE OF SERVICE ....................................................................52

1

CERTIFICATE OF COMPLIANCE.....................................................................53

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Wright*,
468 U.S. 737 (1984)...................................................................................28

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................35

*Carder v. Cont'l Airlines, Inc.*,
636 F.3d 172 (5th Cir. 2011) .....................................................................37

*Coffman v. Chugach Support Servs., Inc.*,
411 F.3d 1231 (11th Cir. 2005) ......................................... 11, 12, 15, 40, 41, 42

*Culverhouse v. Paulson & Co. Inc.*,
813 F.3d 991 (11th Cir. 2016) ...................................................................33

*Davis v. Orange Cnty.*,
No. 23-12759, 2024 WL 3507722 (11th Cir. July 23, 2024) ...........................38

*Debernardis v. IQ Formulations, LLC*,
942 F.3d 1076 (11th Cir. 2019) .................................................................28

*Dees v. Hyundai Motor Mfg. Alabama, LLC*,
368 F. App'x 49 (11th Cir. 2010) ...............................................................30

*Farley v. Nationwide Mut. Ins. Co.*,
197 F.3d 1322 (11th Cir. 1999) .................................................................30

*Franks v. Bowman Transp. Co.*,
424 U.S. 747 (1976)...................................................................................43

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)...................................................................................27

*Georgia Republican Party v. Sec. & Exch. Comm'n*,
    888 F.3d 1198 (11th Cir. 2018) ...............................................................27

*Harwood v. Am. Airlines, Inc.*,
    963 F.3d 408 (4th Cir. 2020) .............................................................47, 48

*Heckler v. Mathews*,
    465 U.S. 728 (1984)................................................................................29

*Herkert v. Bisignano*,
    No. 24-1420, 2025 WL 2348704 (4th Cir. Aug. 14, 2025)......................38

*Herrera v. City of Hialeah, Fla.*,
    No. 21-14271, 2023 WL 238999 (11th Cir. Jan. 18, 2023) .....................37

*Holland v. Carnival Corp.*,
    50 F.4th 1088 (11th Cir. 2022) ..............................................................35

*Jung v. K. & D. Min. Co.*,
    356 U.S. 335 (1958)................................................................................22

*Leib v. Georgia-Pac. Corp.*,
    925 F.2d 240 (8th Cir. 1991) .................................................................15

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...........................................................................27, 29

*McNeal v. City of Blue Ash, Ohio*,
    117 F.4th 887 (6th Cir. 2024) ................................................................38

*Mills v. Foremost Ins. Co.*,
    511 F.3d 1300 (11th Cir. 2008) .........................................................28, 31

*Mission Product Holdings, Inc. v. Tempnology, LLC*,
    587 U.S. 370 (2019)................................................................................28

*Moody v. Holman*,
    887 F.3d 1281 (11th Cir. 2018) ..............................................................31

*Muldrow v. City of St. Louis, Missouri*,
    601 U.S. 346 (2024)............................................25, 35, 36, 37, 39

3

*Muransky v. Godiva Chocolatier, Inc.*,
   979 F.3d 917 (11th Cir. 2020) ...................................................................26

*Myers v. Gilman Paper Corp.*,
   544 F.2d 837 (5th Cir. 1977) ...................................................................43

*Myrick v. City of Hoover, Alabama*,
   69 F.4th 1309 (11th Cir. 2023) ...........................................................11, 14

*Petty v. Metro. Gov't of Nashville-Davidson Cnty.*,
   538 F.3d 431 (6th Cir. 2008) ..............................................................47, 48

*Polelle v. Fla. Sec'y of State*,
   131 F.4th 1201 (11th Cir. 2025) .....................................................26, 31, 33

*Reeves v. Comm'r, Alabama Dep't of Corr.*,
   23 F.4th 1308 (11th Cir. 2022) ................................................................27

*Richards v. Canyon Cnty.*,
   No. 12-cv-00424, 2014 WL 1270665 (D. Idaho Mar. 26, 2014) .................31, 32

*Rios v. Centerra Grp. LLC*,
   106 F.4th 101 (1st Cir. 2024).................................................................38

*Romano v. John Hancock Life Ins. Co. (USA)*,
   120 F.4th 729 (11th Cir. 2024) ................................................................31, 34

*Serricchio v. Wachovia Sec. LLC*,
   658 F.3d 169 (2d Cir. 2011) ...................................................................30

*Sheehan v. Dep't of Navy*,
   240 F.3d 1009 (Fed. Cir. 2001) ................................................................40

*Sierra v. City of Hallandale Beach, Fla.*,
   996 F.3d 1110 (11th Cir. 2021) ................................................................28

*Simon v. Eastern Ky. Welfare Rights Organization*,
   426 U.S. 26 (1976)................................................................................29

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)................................................................................27

4

*Thomas v. Broward Cnty. Sheriff's Off.*,
  71 F.4th 1305 (11th Cir. 2023) ....................................................40

*Torres v. Texas Dep't of Pub. Safety*,
  597 U.S. 580 (2022)....................................................................15

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).................................................................27, 28

*U.S. E.E.O.C. v. W&O, Inc.*,
  213 F.3d 600 (11th Cir. 2000) ......................................................45

*United States v. Alabama Dep't of Mental Health & Mental Retardation*,
  673 F.3d 1320 (11th Cir. 2012) .....................................................11

*Uzuegbunam v. Preczewski*,
  592 U.S. 279 (2021).................................................................28, 46

*Warth v. Seldin*,
  422 U.S. 490 (1975).....................................................................31

*Welborn v. Reynolds Metals Co.*,
  868 F.2d 389 (11th Cir. 1989) ......................................................43

*Young Apartments, Inc. v. Town of Jupiter*,
  529 F.3d 1027 (11th Cir. 2008) ....................................................26

## Constitutional Provisions

U.S. Const. art. I, § 8, cl. 12..................................................................15

U.S. Const. art. I, § 8, cl. 13..................................................................15

5

**Statutes**

38 U.S.C.

§ 4301(a)(1) ...................................................................................11
§ 4301(a)(2) ...................................................................................11
§ 4301(a)(3) ...................................................................................11
§ 4303(2)...............................................................................12, 37, 42
§ 4303(4).......................................................................................12
§ 4303(9).......................................................................................47
§ 4311.................................................................................34, 37, 40
§ 4311(a) ..................................................................................12, 34
§ 4311(c) ..................................................................................12, 34
§ 4312(a) .......................................................................................13
§ 4313.......................................................................................46, 47
§ 4313(a) ..............................................................................46, 47, 48
§ 4313(a)(1) ...................................................................................13
§ 4313(a)(2) ...................................................................................13
§ 4313(a)(2)(A)...............................................................................48
§ 4313(a)(3) ...................................................................................47
§ 4313(b)........................................................................................46
§ 4316............................................................................................46
§ 4316(a) ..............................................................................13, 47, 48
§ 4316(b)(1)(A)...............................................................................13
§ 4316(b)(1)(B)...............................................................................13
§ 4316(d)...........................................................................14, 34, 49, 50
§ 4318(a) .......................................................................................14
§ 4323(d)(1) ...................................................................................30
§ 4323(d)(1)(A)......................................................................14, 45, 46
§ 4323(d)(1)(B)........................................................................14, 43
§ 4323(d)(1)(C)........................................................................14, 43
§ 4323(d)(1)(D)........................................................................14, 44
§ 4323(d)(2)(A)...............................................................................14
§ 4323(e)(1) ..........................................................................15, 45, 50
§ 4323(e)(2) ...................................................................................15
§ 4323(e)(3) .............................................................................15, 45

42 U.S.C.

§ 2000e–2(a)(1)......................................................................36, 37
§ 4323(d)(1)(A)...............................................................................50

6

**Regulations**

20 C.F.R.
  § 1002.7(b) ..........................................................................................................47
  § 1002.32(b) .........................................................................................................48
  § 1002.181 ............................................................................................................48
  § 1002.191 ............................................................................................................47

**Other Authorities**

Leisha Self, *A Guide to the Uniformed Services Employment and
  Reemployment Rights Act and the Recent Hostile Work
  Environment Amendment*, 28 ABA J. Lab. & Emp. L. 449 (2013) ....................37

## JURISDICTIONAL STATEMENT

Appellant Michael Baluja appeals the district court's dismissal of his complaint and amended complaint alleging violations of the Uniformed Services Employment and Re-employment Rights Act. Final judgment was entered on August 20, 2025. A59-A61 (Doc. 25 at 1-3).[1] The district court had jurisdiction over Baluja's complaint because it presented a federal question under 28 U.S.C. § 1331. Baluja filed a timely notice of appeal on September 17, 2025. A62-A63 (Doc. 26 at 1-2). This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] "Doc. ##" references are to the district court docket below, No. 24-cv-23470 (S.D. Fla.).

**STATEMENT OF ISSUES**

1.    Whether the district court properly held that Plaintiff lacks standing because the Uniformed Services Employment and Re-employment Rights Act ("USERRA") does not provide remedies—such as damages and reinstatement—for Defendant's violations of the statute.

2.    Whether the district court properly held that Plaintiff failed to allege that Defendant violated USERRA by transferring him to a different division, removing him from the SWAT team, and paying him less as an explicit consequence of his military service, as well as engaging in employment practices that the statute forbids.

**INTRODUCTION**

Appellant Michael Baluja alleged that his employer—the Coral Gables Police Department—violated USERRA by transferring him to a different unit, removing him from the department's SWAT team, revoking privileges to choose shifts and exercise while on duty, and refusing to honor his reemployment rights, all because he refused to stop serving in the U.S. Army National Guard. He also alleged that his employer engages in employment practices that violate USERRA. He seeks wages, interest, liquidated damages, and injunctive relief. Despite these clear allegations, the district court held that he lacked standing to pursue his claims solely because the department had repaid a portion of the wages he is owed.

That holding is wrong. As a servicemember occasionally called away for military duty, who alleges he has suffered concrete harms as a result of his employer's unlawful conduct, Baluja plainly has standing to bring a USERRA claim against his employer and is entitled to relief if he prevails on his claims. The district court's conclusion that he lacks standing is especially indefensible because the Supreme Court recently held that a plaintiff alleging a nearly identical fact pattern stated a claim for employment discrimination under Title VII. If that were not enough, Baluja also pleaded facts that the department violated USERRA's requirements for prompt re-employment and use of military leave.

This Court should reverse the district court and hold that Baluja has standing and that his complaint states a claim for relief.

## STATEMENT OF THE CASE

### A.    Legal Background

"Military reservists play a vital role in our nation's defense policy. When called to service, these men and women are expected to leave their civilian jobs, sometimes for years on end." *Myrick v. City of Hoover, Alabama*, 69 F.4th 1309, 1312 (11th Cir. 2023). "[T]o encourage service in the uniformed services," Congress passed USERRA in hopes of "eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service." 38 U.S.C. § 4301(a)(1); *see also United States v. Alabama Dep't of Mental Health & Mental Retardation*, 673 F.3d 1320, 1324 (11th Cir. 2012). Congress sought "to minimize the disruption to the lives of persons performing service in the uniformed services . . . by providing for the prompt reemployment of such persons upon their completion of such service." 38 U.S.C. § 4301(a)(2); *see also Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1234 (11th Cir. 2005). Congress also intended "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3). Congress hoped that the statute would "mitigate the employment disadvantages that stem from non-career military service." *Myrick*, 69 F.4th at 1314.

11

In pursuit of these goals, Congress enacted several employment laws reaching every employer in the United States. *See* 38 U.S.C. § 4303(4) (broadly defining "employer"). First, Congress prohibited discrimination on the basis of service. An employer may not deny "employment, reemployment, retention in employment, promotion, or any benefit of employment" to any "person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service" on the basis of that service. *Id.* § 4311(a). The term "benefit of employment" covers "the terms, conditions, or privileges of employment," and is expansively defined to

> includ[e] any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

*Id.* § 4303(2).

"An employer shall be considered to have engaged in actions prohibited" if the employee's service "is a motivating factor in the employer's action." *Id.* § 4311(c). "[M]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Coffman*, 411 F.3d at 1238.

12

Second, Congress laid out a detailed regime for reemployment rights following periods of service. In general, "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of" USERRA if the employee (1) provides the employer advance written or verbal notice of service; (2) the employee's cumulative service length does not exceed five years; and (3) the employee submits a reemployment application. 38 U.S.C. § 4312(a). Employers must usually place the employee in the position the person would have occupied had the period of service not interrupted continuous employment. *See Id.* § 4313(a)(1), (2). The employee is also "entitled to the seniority . . . that the person had on the date of the commencement of service . . . plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed." *Id.* § 4316(a).

Third, Congress specified that servicemembers' military leave must be treated the same as other employees' non-military leave. Employees absent by reason of service "shall be . . . deemed to be on furlough or leave of absence while performing such service." *Id.* § 4316(b)(1)(A). Servicemembers are entitled to the same "rights and benefits" as the employer generally provides "to employees having similar seniority, status, and pay who are on furlough or leave of absence." *Id.* § 4316(b)(1)(B). As a result, an employer must often provide employees on military

13

leave the same benefits that it provides employees on paid administrative leave.  *See Myrick*, 69 F.4th at 1319-20.  The employer may not require an employee to use accrued leave during the period of service.  38 U.S.C. § 4316(d).  An employee on military leave is also considered not to have incurred a break in service for the purposes of any pension benefit plan.  *See Id.* § 4318(a).

USERRA affords plaintiffs numerous remedies.  A federal court "may require the employer to compensate" an employee "for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of" USERRA, *id.* § 4323(d)(1)(B), as well as three percent interest on that amount, *see id.* § 4323(d)(1)(C).  If an employer knowingly violates USERRA, the court may award additional liquidated damages amounting to "the greater of $50,000" or the amount of lost wages and benefits plus interest.  *Id.* § 4323(d)(1)(D).  Congress made clear, however, that a money award does not end the inquiry—"[a]ny compensation . . . shall be in addition to, and shall not diminish, any of the other rights and benefits provided for under" the statute.  *Id.* § 4323(d)(2)(A).

Courts may also award injunctive relief.  "The court may require the employer to comply with the provisions of" USERRA, *id.* § 4323(d)(1)(A), and "shall use, in any case in which the court determines it is appropriate, its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under" USERRA,

*id.* § 4323(e)(1).  Congress repeated that a motion for injunctive relief may not be denied simply because a plaintiff can be awarded wages as damages.  *Id.* § 4323(e)(3).  Further emphasizing this point, Congress laid out USERRA-specific requirements for permanent injunctions that do not require the court to determine whether compensatory damages are sufficient to deter unlawful conduct.  *See id.* § 4323(e)(2).

USERRA serves core national interests "as an exercise of [Congress's] power '[t]o raise and support Armies' and '[t]o provide and maintain a Navy.'"  *Torres v. Texas Dep't of Pub. Safety*, 597 U.S. 580, 587 (2022) (citing U. S. Const. art. I, § 8, cls. 12–13).  As such, "USERRA 'is to be liberally construed for the benefit of those who left private life to serve their country.'"  *Coffman*, 411 F.3d at 1238 (quoting *Leib v. Georgia-Pac. Corp.*, 925 F.2d 240, 245 (8th Cir. 1991)).

### B.    Factual Background

Like many Americans, Appellant Michael Baluja cares for his community as a public servant.  He has worked as a police officer at the Coral Gables Police Department ("CGPD") for more than two decades.  A6 (Doc. 1 at 2).  Baluja served on the department's SWAT team for approximately 19 of those years, as well as 12 years in the Marine Patrol Unit.  A6; A9 (Doc. 1 at 2, 5).

Baluja, however, serves his community twice over.  In addition to his role as a police officer, Baluja has been a Green Beret in the United States Army Special

15

Forces for over a decade. A6-A7 (Doc. 1 at 2-3). He has deployed overseas at least eight times and possesses several advanced certifications qualifying him as an instructor. *Id*. He remains an active member of the United States Army National Guard. A7 (Doc. 1 at 3). Over the past several years, the Army has called upon Baluja several times to deploy on active duty.

Apparently displeased with Baluja's absences, CGPD officials took steps to punish him for taking leave to deploy with the National Guard. When Baluja received deployment orders in late 2018, CGPD Police Chief Edward Hudak asked Baluja whether he volunteered for the deployment or whether his orders were mandatory. A9 (Doc. 1 at 5). Chief Hudak then expressed that if Baluja continued to leave on military duty, he planned to transfer Baluja from the Marine Patrol Unit. *Id*. Chief Hudak removed Baluja from the Marine Patrol Unit on January 7, 2019, after Baluja continued to serve in the National Guard, and transferred him to the Uniform Patrol Division. *Id*. Chief Hudak did so even though the Marine Patrol Unit had a vacancy that had remained open for three years. *Id*.

Despite his removal from a specialized unit at the CGPD, Baluja remained an active member of the National Guard and continued to take leave for deployments and trainings. *See, e.g.*, A10-A11; A13-A15 (Doc. 1 at 6-7, 9-11). On December 28, 2022, Chief Hudak responded by removing Baluja from the department's SWAT team. A18 (Doc. 1 at 14). He took this action even though Baluja's 2022

16

performance evaluation assigned him a rating of "95/Very Good," and his supervisor described him as "highly trained" and "very dependable." A17-A18 (Doc. 1 a 13-14). Baluja's advanced military training was invaluable to the SWAT team's mission. A19 (Doc. 1 at 15). Yet the department took the unusual step of placing Baluja on "Inactive Status," which it only uses when SWAT members fail to qualify for the team, even though Baluja has never failed to qualify. A19-A20 (Doc. 1 at 15-16). Neither Chief Hudak nor the SWAT team commander provided an explanation for the decision, and the commander refused to answer when Baluja asked why he was removed from the unit. A18 (Doc. 1 at 14). Removal from the SWAT team impacted Baluja's benefits within the department, such as the privilege to exercise while on duty. *See* A20 (Doc. 1 at 16).

The CGPD did not take similar adverse action to remove other officers from the SWAT team without explanation, even when those officers failed to live up to necessary standards. Just months after Baluja's removal from the SWAT team, for example, one officer negligently discharged his firearm into the weapons cleaning table with other officers present in the room. A19 (Doc. 1 at 15). That officer was not suspended, removed from the SWAT team, or even prevented from serving as a firearms instructor. *Id.*

Baluja's transfer from the Marine Unit and SWAT team took place in the context of broader hostility to Baluja's military service. For example, after Baluja

17

was injured during a 2020 deployment, treated at Walter Reed Medical Center, and medically cleared to return to work, Chief Hudak placed Baluja on administrative leave for a month without explanation. A12 (Doc. 1 at 8). Chief Hudak then took the unusual step of contacting Baluja's military chain of command to request that Baluja be excused from further military duty. A12-A13 (Doc. 1 at 8-9). He also placed Baluja on probationary status, requiring that a Field Training Officer accompany him and fill out daily observation reports. A13 (Doc. 1 at 9). In another instance, Chief Hudak personally contacted Baluja's Group Commander—in violation of Army protocol—to request Baluja's service record, training records, and information about his deployments. A23 (Doc. 1 at 19). The Army issued Baluja a written reprimand following this improper contact. A23-A24 (Doc. 1 at 19-20).

CGPD officials' displeasure with Baluja's use of military leave bled over into his use of personal leave, as well. When Baluja took a day of family medical leave in early 2023, for instance, the CGPD sent an officer to his apartment outside of Coral Gables to gain access to his apartment building, bang on his door, and perform a "wellness check." A20 (Doc. 1 at 16). When Baluja used another day of leave weeks later, he was subjected to additional harassment and a wellness check. A20-A21 (Doc. 1 at 16-17).

Baluja's transfer from the Marine Patrol Unit and removal from the SWAT team reduced his pay and prevented him from advancing to positions with higher

18

pay. The CGPD has compensated Baluja for only a portion of these financial injuries. In late 2021, the CGPD provided Baluja backpay, pay corrections, and return of improperly allocated leave for the period from January 7, 2019—the date of his removal from the Marine Patrol Unit. A15 (Doc. 1 at 11). The department has continued to pay Baluja Marine Patrol Unit and SWAT team wages since that date.

The department also audited Baluja's compensation and provided incomplete corrections to his pay for a period spanning December 31, 2023, to May 27, 2024. A24-A28 (Doc. 1 at 20-24). That audit failed to address the period of Baluja's deployment spanning August 4, 2023, to December 31, 2023. A28 (Doc. 1 at 24). The audit also incorrectly listed the funds Baluja actually received. *Id.* Baluja has therefore not received compensation for at least the following injuries:

- Front pay and wages reflecting Baluja's "rightful place" in the department following years of discriminatory treatment;

- Complete pay adjustments for the period spanning August 4, 2023, to May 27, 2024;

- Liquidated damages for willful USERRA violations; and

- Interest on withheld pay.

The CGPD has yet to reinstate Baluja to either the Marine Patrol Unit or the SWAT team, and he remains in the Uniform Patrol Division. The CGPD's actions

19

have represented a major barrier to Baluja's law enforcement career and prevented his advancement to positions for which he is well qualified, and for which he would receive higher pay.

### C.    Procedural Background

Baluja filed his original complaint against the City of Coral Gables in the Southern District of Florida on September 9, 2024. *See generally* A5-A39 (Doc. 1). Baluja alleged USERRA violations for the CGPD's adverse employment actions motivated by his membership in the uniformed services, insufficient pay, and unlawful restrictions on use of military leave.[2] A31-A32 (Doc. 1 at 27-28). Baluja sought lost wages and benefits, *see* A33 (Doc. 1 at 29), and alleged that the CGPD's violations were willful and warranted liquidated damages because he had repeatedly placed the department on notice of its obligations, *see* A7; A23; A33 (Doc. 1 at 3, 19, 29). He also pursued injunctive relief. A33 (Doc. 1 at 29).

Coral Gables moved to dismiss on November 8, 2024. *See* A2 (Doc. 9). The City argued that Baluja's complaint was a shotgun pleading, and that removal from the Marine Patrol Unit and the SWAT team did not qualify as adverse employment actions because they did not represent "substantial[]" changes to Baluja's employment. (Doc. 9 at 12-13). The City asserted that Baluja failed to establish

---

[2] Baluja also pled claims under the Servicemembers Civil Relief Act, Florida Uniformed Servicemembers Protection Act, and state tort law, which he does not pursue on appeal. *See* A34-A38 (Doc. 1 at 30-34).

that the CGPD took action because of Baluja's military status.  (Doc. 9 at 13-14).

Coral Gables also argued that USERRA cannot provide Baluja a remedy because the

CGPD had corrected his pay, returned leave time, and paid back "all of the time"

related to Baluja's removal from the Marine Patrol Unit.  (Doc. 9 at 9-11).  Baluja

opposed, pointing out that the city failed to engage with any of the alleged facts

supporting discriminatory animus, as well as USERRA's remedies for Baluja's

transfer, demotion, and reduced pay.  (Doc. 11 at 8).

On March 6, 2025, the district court granted the city's motion to dismiss

without prejudice.  *See* A40-A46 (Doc. 13 at 1-7).  The court characterized Baluja's

complaint as seeking only "financial damages."  A40 (Doc. 13 at 1).  In a single

paragraph of analysis, the court explained that Baluja "does not have standing to

pursue claims under USERRA for adverse employment actions that have already

been corrected by the City."  A42 (Doc. 13 at 3).  The court observed that in "October

2021," Baluja "received corrections from the City for lost wages and benefits," as

well as  further "partial" corrections "[i]n August 2024."  *Id.*  "As such, Plaintiff

does not have standing to bring a claim for these lost wages and benefits already

corrected by the City."  *Id.*  "As it is unclear which allegations—if any—are

redressable under USERRA, Plaintiff fails to establish standing."  *Id.*  The district

court did not engage with Baluja's allegations about removal from the SWAT team,

or USERRA's provision of equitable remedies and liquidated damages.  The court

also declined to address Baluja's factual allegations that his backpay remained incomplete, and that the discrimination had harmed his career prospects. The district court nonetheless provided Baluja three weeks to amend and administratively closed the case "pending the filing of an amended complaint." A46 (Doc. 13 at 7).[3]

Baluja filed his amended complaint on March 25, 2025. A47-A58 (Doc. 14). In addition to alleging his removal from the Marine Patrol Unit and SWAT team because of his military status, Baluja explained that because of CGPD's discriminatory actions, he "will continue to sustain lost compensation and benefits for the remainder of his work life," including "future pension or retirement benefits." A54 (Doc. 14 at 8). Specifically, his removal from the SWAT team prevented him from working SWAT overtime and off-duty details, as well as prevented him from receiving additional pension benefits. A53 (Doc. 14 at 7). Baluja alleged that because of his transfers and demotions, he will not have the same pension benefits and does not occupy a position of the same seniority and pay he would occupy absent his military service. A54 (Doc. 14 at 8). Baluja provided a detailed chart of the money the city still owes him, including retirement and pension plan funds, several years of pay differential, and forward looking pay.

---

[3] The district court's order was not a final, appealable order and thus merges into its subsequent order for the purposes of appeal. *See Jung v. K. & D. Min. Co.*, 356 U.S. 335, 337 (1958) (holding that order explicitly granting leave to amend "did not constitute the final judgment in the case").

22

| Item | Description | Value |
|---|---|---|
| 1 | Base salary remaining years of service—five (5) years until 25 years of service retirement with 300 hours of pensionable overtime | $716,676 |
| 2 | Salary for additional eight (8) years of drop with no overtime ($125, 917.00 x 8) and assuming no additional pay increases after FY28 | $1,007,336 |
| 3 | Eight (8) years of drop at average 4% compound interest (interest normally between 3% and 7%) | $1,030,160 |
| 4 | Chapter 185 fund, average for 33 years of service (average) | $150,000 |
| 5 | Post Employment Health Plan, average for 33 years of service (average) | $150,000 |
| 6 | Compensatory Amount Subtotal | $3,054,172 |
| | | |
| 7 | Estimated Attorney Fees and costs (if goes to trial) | $400,000 |
| 9 | | |

A57 (Doc. 14 at 11) (screenshot of complaint).

Coral Gables moved to dismiss anew, raising two arguments. First, the City argued that Baluja's 12-page, single-count amended complaint represented a shotgun pleading. (Doc. 17 at 3-4). Second, the City asserted that Baluja failed to state a claim because removal from the Marine Patrol Unit and SWAT team did not constitute adverse employment actions, and because he failed to allege that these actions were taken because of his military status. (Doc. 17 at 7-10). The City did not move to dismiss for lack of standing.

The district court nonetheless granted the City's motion on the same grounds as before, holding *sua sponte* that Baluja lacked standing to pursue a remedy under USERRA. The court explained that Baluja's original complaint alleged that he "received corrections from the City for lost wages and benefits in October 2021, and that he received at least partial corrections from the City for additional lost wages and benefits in August 2024." A60 (Doc. 25 at 2). "As the Court explained, Plaintiff lacks standing to bring a claim for lost wages and benefits already corrected by the

23

City." *Id.* "Plaintiff's Amended Complaint," the court concluded, "does not clarify which alleged actions have or have not been corrected by the City or to what extent." *Id.* The court faulted Baluja for "omit[ting] reference to the City's corrections" and held that "[a]s it remains unclear which actions have and have not been corrected by the City, Plaintiff has failed to establish standing, and his Amended Complaint must be dismissed." A60-A61 (Doc. 25 at 1-2). The court declined to address Baluja's detailed accounting and categorization of money he remains owed for the position he would have occupied absent the discrimination, the availability of reinstatement to the special units from which he was transferred, or the potential for injunctive relief to correct the CGPD's other violations. This appeal followed.

## SUMMARY OF ARGUMENT

The district court erred in holding that Baluja, a servicemember complaining of discrimination and unlawful employment practices under USERRA, lacks standing to pursue these claims. Baluja not only has standing to sue the City under USERRA, but he also states a claim for relief on the merits. This Court should reverse the lower court's decision and remand for further proceedings.

Baluja plainly meets the requirements for Article III standing. He complains of several injuries, including employment discrimination, denial of pay and promotions, and subjection to unlawful employment practices. These injuries are directly traceable to his employer: the City of Coral Gables. USERRA also provides

24

the district court numerous remedies to address these wrongs, including compensatory damages, liquidated damages, and injunctive relief. Baluja therefore has standing to sue his employer for actions unlawful under USERRA.

Baluja also stated a claim on the merits for these USERRA violations. Baluja's transfer from the Marine Patrol Unit and removal from the SWAT team changed the terms and conditions of his employment and represented adverse employment actions. The Supreme Court recently ruled—in a strikingly similar case involving the transfer of a police officer from her unit based on a protected characteristic—that a plaintiff alleging employment discrimination need not "show that the injury satisfies a significance test" to establish adverse employment action. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 350 (2024). Baluja likewise need not allege more here.

Baluja also adequately pleaded that his employer took this adverse employment action because of his military status. He alleged that the CGPD conditioned its decision to transfer him to the Uniformed Patrol Division on his continued service in the military, meaning that his service represented an unlawful motivating factor in the employer's decision. The CGPD expressed hostility to Baluja's continued service, even contacting his command to seek his excusal from upcoming duty. Combined with Baluja's positive performance reviews and the

25

City's refusal to provide a reason, Baluja was plainly removed from the SWAT team and denied associated privileges for similarly discriminatory reasons.

Finally, Baluja pleaded a claim that the City is engaged in ongoing practices deemed illegal under USERRA. Baluja pleaded facts that the CGPD violates USERRA's prompt reemployment requirements by placing servicemembers on administrative leave and probationary status upon return from duty. He also sufficiently alleged that the department unlawfully requires servicemembers to use personal accrued leave while on military orders.

## STANDARD OF REVIEW

This Court will "review *de novo* the threshold jurisdictional question of whether plaintiffs enjoy standing to sue in the federal courts." *Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1207 (11th Cir. 2025) (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 923 (11th Cir. 2020) (en banc)). This Court also reviews *de novo* an order granting a motion to dismiss. *See Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1037 (11th Cir. 2008).

## ARGUMENT

### I.   Baluja Has Article III Standing

Baluja is a servicemember complaining of employment discrimination and unlawful employment practices under USERRA. His lawsuit thus plainly meets Article III standing requirements. In evaluating a plaintiff's standing to bring a

26

claim, courts first assume the plaintiff's success on the merits and then determine whether an available remedy can address the alleged injuries. The district court erred in failing to conduct this analysis, as USERRA provides several remedies for the harms Baluja alleges.

### A.    Baluja Has Standing to Bring a USERRA Claim

Baluja has standing to pursue his USERRA claim against the Defendants. "To have Article III standing, a plaintiff must show (1) injury in fact, (2) causation, and (3) redressability." *Reeves v. Comm'r, Ala. Dep't of Corr.*, 23 F.4th 1308, 1316 (11th Cir. 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). This test simply ensures that the plaintiff has a sufficient "personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Ga. Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1201 (11th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

*Injury.* Baluja has Article III injury. To establish the injury component of Article III standing, a plaintiff must show "an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). The injury must also have "a close historical or common-law analogue." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Baluja has at least two concrete, particularized injuries: (1)

27

financial injuries from lost wages and harms to his employment; and (2) injury arising from discriminatory treatment.

Baluja has suffered the most elemental form of Article III injury: financial harm. *See Id.* at 425 ("If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."). Baluja alleged that the City of Coral Gables owes him money in the form of unpaid wages, interest, and liquidated damages. *See* A57 (Doc. 14 at 11). Even a "single dollar" is sufficient to support standing. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021); *see also Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 377 (2019) ("If there is any chance of money changing hands, [the] suit remains live."); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) ("Certainly, an economic injury qualifies as a concrete injury."). Although the city has paid Baluja a portion of the wages he is owed (but not interest or liquidated damages), he "clearly had standing to sue for damages" because he was "paid less on the claim than [he] contend[s]" he is "owed." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008).

Baluja has also suffered cognizable injury because he has been "personally and directly subjected to discriminatory treatment." *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1114 (11th Cir. 2021); *see also TransUnion*, 594 U.S. at 426 (recognizing "discriminatory treatment" as a concrete injury (citing *Allen v.*

28

*Wright*, 468 U.S. 737, 757, n.22 (1984)).  "[D]iscrimination itself . . . can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group."  *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) (citation omitted).  Baluja alleged that Chief Hudak told Baluja he would take adverse action based on his military status.  *See* A50-A51 (Doc. 14 at 4-5).  Baluja also alleged that the city imposes unlawful requirements on his military leave that affect his benefits.  *See, e.g.*, A52-A53 (Doc. 14 at 6-7) (describing City's unlawful removal of hours from annual leave and effects on pension benefits).  Baluja thus pleaded facts supporting at least two injuries that are actual, concrete, and particularized.

*Traceability.*  Baluja also adequately pleaded traceability.  Injuries are "fairly . . . trace[able]" to a defendant when they are "not . . . th[e] result [of] the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)).  The complaint plausibly alleged that the defendant is responsible for Baluja's financial injuries and his discriminatory treatment injuries.  The City and no other party is responsible for paying Baluja's wages and assigning him his duties.  Baluja alleged that Chief Hudak—an agent of the city—transferred him from the Marine Patrol Unit, *see* A51 (Doc. 14 at 5), and that the City also removed him from the SWAT team, *see* A53 (Doc. 14 at 7). The City also generally

controls its own policies, including the unlawful use of annual leave to cover military leave.  *See* A52 (Doc. 14 at 6).  Baluja's injuries are thus fairly traceable to the defendants.

**Redressability.**  Finally, Baluja's injuries are plainly redressable in this suit. *See Dees v. Hyundai Motor Mfg. Alabama, LLC*, 368 F. App'x 49, 52-53 (11th Cir. 2010) (describing relief available under USERRA).  Courts can award money damages and injunctive and declaratory relief to remedy past and ongoing USERRA violations.  *See* 38 U.S.C. § 4323(d)(1) (providing these remedies).[4]  An award of money damages would redress Baluja's past financial and discriminatory treatment injuries, and injunctive relief would remedy his ongoing financial and discriminatory treatment injuries.

## B.     The District Court's Standing Analysis Was Erroneous

The district court erroneously concluded that Baluja lacked Article III standing because (in the district court's view) his complaint failed to state a claim. That was error twice over.  As explained in the next section, it was erroneous because Baluja's complaint states a claim under USERRA.  But it was also erroneous because Article III standing does not depend on the merits of the claim, but instead asks

---

[4] *See, e.g.*, *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 193 (2d Cir. 2011) (finding that USERRA "provides for the remedy of reinstatement"); *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1338 (11th Cir. 1999) (explaining that "reinstatement offers the most likely means of making a plaintiff whole by allowing her to continue her career as if the discrimination had not occurred").

whether the plaintiff has suffered an injury that *could* be redressed by a favorable ruling, whether the plaintiffs' claim is meritorious or not. *Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1211 (11th Cir. 2025) (explaining courts "assess plaintiffs' standing 'assum[ing] that on the merits the plaintiffs would be successful in their claims.'" (quoting *Culverhouse v. Paulson & Co. Inc.*, 813 F.3d 991, 994 (11th Cir. 2016))); *see also Moody v. Holman*, 887 F.3d 1281, 1285 (11th Cir. 2018) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975))).

The district court conflated the *merits* of Baluja's claim with the antecedent question whether he has standing to pursue those claims in the first place. That is error. This Court has not hesitated to reverse a district court's jurisdictional holding when it "conflates the merits with standing." *Polelle*, 131 F.4th at 1211; *see also Romano v. John Hancock Life Ins. Co. (USA)*, 120 F.4th 729, 737 (11th Cir. 2024) (reversing holding where the "the district court conflated the merits of the ERISA claims and the standing of the [plaintiffs] and the class to bring those claims"); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1306-07 (11th Cir. 2008) (similar).

*Richards v. Canyon Cnty.*, No. 12-cv-00424, 2014 WL 1270665 (D. Idaho Mar. 26, 2014)—the case on which the district court relied for its standing analysis below—is not to the contrary. *See* A42 (Doc. 13 at 3); A60 (Doc. 25 at 2). The USERRA plaintiff in *Richards* had left his position and received compensation

31

for his accrued vacation leave, but he nonetheless complained that he "did not receive the 'benefit' of being able to use his vacation days as he saw fit." *Richards*, 2014 WL 1270665, at \*2. The court there compared the plaintiff's claim to "pain and suffering" or "emotional distress," *id.* at \*3, and observed that USERRA does not provide a remedy for those kinds of damages, *id.* at \*4. The court therefore assumed that the plaintiff could prevail on his claim that a lost opportunity to enjoy vacation time violates USERRA, but found there was "no relief which the Court can give" for that injury. *Id.* at \*5. The *Richards* court thus held that the plaintiff lacked standing to bring his claim because USERRA provided no remedy even assuming he succeeded on his claims.

Baluja's situation is quite different from that of the *Richards* plaintiff. Baluja alleged that he was transferred from two different positions in CGPD because of his military status, denied backpay, and subjected to employer requirements that violate USERRA. No one—not Coral Gables nor the district court—has suggested that USERRA lacks remedies to right these wrongs. *See id.* at \*4 (explaining that the plaintiff's result "would be different" if he sought pay). Furthermore, the *Richards* plaintiff had left his employment position, meaning that "the equitable injunctive powers of the court" were not "available to remedy the wrong." *Id.* In contrast, Baluja remains a CGPD employee and seeks reinstatement to positions from which

32

he was unlawfully removed. The lower court here should have followed the *Richards* court in assuming that Baluja could prevail on each of his claims and determined whether it had the power to remedy them. Failure to engage in this analysis was error.

Baluja—a soldier who complains that his employer transferred him from his police unit, denied him pay, and mistreated him because of his National Guard service—unquestionably has standing to pursue USERRA claims. Baluja's standing is so clear that Coral Gables did not even argue lack of standing in its renewed motion to dismiss. Instead, Coral Gables argued below that Baluja failed to state a claim because he does not allege an adverse employment action and because he fails to allege that the city took adverse employment action based on his military status. (Doc. 17 at 4-10). The district court's *sua sponte* dismissal for lack of standing was clearly erroneous.

## II. Baluja Stated a Claim for Employment Discrimination and Unlawful Employment Practices

Baluja stated a claim against the City of Coral Gables for USERRA violations under multiple theories.[5] *First*, Baluja plausibly alleged discrete lost compensation

---

[5] On several occasions, this Court has observed that a district court conflating standing with the merits has made a "labeling error," and the court then proceeded to rule on the merits after finding that the plaintiff has standing. *Culverhouse v. Paulson & Co. Inc.*, 813 F.3d 991, 994 (11th Cir. 2016) (proceeding to the merits of motion to dismiss); *see also Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1211 (11th

and discrete discriminatory-treatment USERRA violations under 38 U.S.C. § 4311. Baluja alleged that his employer deprived him of wages and other employment-related compensation he would have obtained had he not been the victim of discrimination on the basis of his military service. Baluja also alleged that he suffered "adverse" treatment separate and apart from his financial injuries as a result of discrimination against him on the basis of his military service. *Second*, Baluja plausibly alleged that the City violated his reemployment rights under 38 U.S.C. § 4313. *Third*, Baluja alleged that the City requires servicemembers to use personal leave in violation of 38 U.S.C. § 4316(d).

### A. Coral Gables Engaged in Military Status Discrimination By Taking Adverse Employment Action Against Baluja Because of His Military Status.

Baluja plausibly alleged that the City violated USERRA, 38 U.S.C. § 4311, by engaging in discrimination on the basis of his military service that resulted in lost wages and changes to the terms and conditions of his employment. To state a claim under § 4311, a plaintiff need only allege (1) he was denied a "benefit of employment," and (2) membership in the armed services was "a motivating factor in the employer's action." *Id.* § 4311(a), (c). To plead facts sufficient to make out such a claim, a plaintiff need plead only "'enough facts to state a claim to relief that

---

Cir. 2025) (same); *Romano v. John Hancock Life Ins. Co. (USA)*, 120 F.4th 729, 737 (11th Cir. 2024) (same).

is plausible on its face,' i.e., facts that will 'nudge[] [a plaintiff's] claims across the line from conceivable to plausible.'" *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Baluja's allegations easily meet that standard. The Supreme Court recently held in *Muldrow* that a plaintiff pleading similar facts stated a claim under Title VII. The Court confirmed that a change in the terms or conditions of a plaintiff's employment need not satisfy a "significance test" to represent employment discrimination. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 350 (2024). Baluja states a claim with room to spare by alleging that he was transferred, paid less, and denied other benefits of employment as a direct result of his absences to perform obligations in the uniformed services.

*Adverse Employment Action.* Baluja alleged discriminatory treatment similar to that experienced by the plaintiff in *Muldrow*. The plaintiff there worked as a municipal police officer for nearly a decade, rising to a position in St. Louis's specialized Intelligence Division. 601 U.S. at 350. The Federal Bureau of Investigation deputized her because of this role, providing her status and perks such as federal credentials and a take-home vehicle. *See id.* Much like Baluja, her superiors afforded her high praise for her work. *See id.* at 350-51. When a new Intelligence Division commander was appointed, however, all of this changed. The commander replaced her with a male police officer whom he deemed "a better fit

35

for the Division's 'very dangerous' work." *Id.* at 351. The St. Louis Police Department transferred her to "a uniformed job" with different responsibilities, less prestige, fewer perks, and a different schedule. *Id.*

The plaintiff brought suit under Title VII to challenge the transfer, alleging that the St. Louis Police Department took the action because she was a woman. The district court granted summary judgment to the city, concluding that the plaintiff failed "to show that her transfer effected a 'significant' change in working conditions producing 'material employment disadvantage.'" *Id.* at 352. The Eighth Circuit affirmed on the same basis. *See id.* at 352-53.

The Supreme Court reversed, observing that in Title VII, Congress forbade discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment." *Id.* at 354 (quoting 42 U.S.C. § 2000e–2(a)(1)). The Court explained that "[t]he 'terms [or] conditions' phrase . . . is not used 'in the narrow contractual sense'; it covers more than the 'economic or tangible.'" *Id.* A "transferee" thus "does not have to show, according to the relevant text, . . . that the harm incurred was 'significant' . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355. The Court confirmed that Congress meant what it said, and that a plaintiff need only "show some harm respecting an identifiable term or condition of employment." *Id.* "The transfer must have left her worse off, but

36

need not have left her significantly so," the Court concluded, and her "allegations . . . meet that test with room to spare." *Id.* at 359.

*Muldrow* applies to USERRA just as much as it applies to Title VII. In *Muldrow*, the Supreme Court considered text prohibiting discrimination against an employee "with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). USERRA similarly prohibits discriminatory treatment regarding "any benefit of employment," 38 U.S.C. § 4311, which it defines as "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice." 38 U.S.C. § 4303(2). USERRA, just like Title VII, applies to the "terms, conditions, or privileges of employment." *Id.*; *see also Herrera v. City of Hialeah, Fla.*, No. 21-14271, 2023 WL 238999, at *3 (11th Cir. Jan. 18, 2023) ("The USERRA statute is very similar to Title VII"). In fact, Congress added the 'terms and conditions' language to USERRA in 2011 to ensure that USERRA would be interpreted at least as broadly as Title VII. *See* Leisha Self, *A Guide to the Uniformed Services Employment and Reemployment Rights Act and the Recent Hostile Work Environment Amendment*, 28 ABA J. Lab. & Emp. L. 449, 469 (2013) (explaining Congress's action to overrule *Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 173 (5th Cir. 2011)).

37

Courts have not hesitated to apply *Muldrow* to other statutes that prohibit discrimination in the "terms, conditions, or privileges of employment." *See, e.g.*, *Davis v. Orange Cnty.*, No. 23-12759, 2024 WL 3507722, at \*4 (11th Cir. July 23, 2024) (Americans with Disabilities Act); *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112-13 (1st Cir. 2024) (same); *Herkert v. Bisignano*, 151 F.4th 157, 164 (4th Cir. Aug. 14, 2025) (Rehabilitation Act); *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 900 (6th Cir. 2024) (Age Discrimination in Employment Act).

USERRA covers an even broader scope of employment activity than Title VII does. Unlike Title VII, USERRA specifies that its terms apply to a wide range of aspects of employment, including any "advantage" or "status" accruing because of employer "practice." 38 U.S.C. § 4303(2). Congress added even further clarity by specifying the sorts of employment benefits within its reach, including aspects like "pension plan[s]," "insurance coverage," "vacations," "and the opportunity to select work hours or location of employment." *Id.* If a transfer counts as adverse employment action under Title VII, then it is certainly adverse employment action under USERRA.

The City of Coral Gables' treatment of Baluja is nearly identical to St. Louis's treatment of the *Muldrow* plaintiff. Baluja is a highly trained law enforcement officer who received top marks in his performance evaluations. *See* A17-A18 (Doc. 1 at 13-14). He served in two sought-after roles in the CGPD: the Marine Patrol

38

Unit and the SWAT team. *See* A6; A9 (Doc. 1 at 2, 5). Those roles came with perks, such as the privilege to work out while on duty. *See* A20 (Doc. 1 at 16). The CGPD transferred Baluja from the Marine Patrol Unit to the Uniform Patrol Division. A9; A16 (Doc. 1 at 5, 12). He was also removed from the SWAT team. A18 (Doc. 1 at 14). These transfers represented changes to the "terms, conditions, or privileges of employment" and inflicted at least "some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 355. Baluja's job duties changed dramatically following reassignment—he was no longer able to deploy or train with the SWAT team, *see* A16 (Doc. 1 at 12), lost privileges, and carried out significantly different duties from those he performed as a Marine Patrol Unit member. He was "left worse off several times over" and plainly experienced adverse employment action. *Muldrow*, 601 U.S. at 359. There is no "significance test." Even the City's revocation of Baluja's "privilege" to work out while on duty represents a sufficient change in the conditions of employment to sustain a cause of action under USERRA. Baluja would therefore state a claim even if the CGPD had not transferred him from the Marine Patrol Unit or removed him from the SWAT team.

*Motivating Factor.* Baluja plausibly alleged that the City of Coral Gables took these adverse employment actions because of his military status. An employer acts unlawfully "if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a

motivating factor in the employer's action." 38 U.S.C. § 4311(c)(1). "[M]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Coffman.*, 411 F.3d at 1238. "The factual question of discriminatory motivation or intent may be proven by either direct or circumstantial evidence." *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001). Claims of unlawful discrimination may be supported by temporal proximity between the military activity and adverse employment action, "inconsistencies between the proffered reason and other actions of the employer," "an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity," and "disparate treatment of certain employees compared to other employees with similar work records or offenses." *Coffman*, 411 F.3d at 1238; *see also Thomas v. Broward Cnty. Sheriff's Off.*, 71 F.4th 1305, 1309 (11th Cir. 2023) (upholding jury finding of discrimination based in part on employer's expressed "animosity" toward servicemembers).

Baluja pleaded a wealth of facts demonstrating that his military status represented one of the factors the CGPD considered in its decision to transfer him from the Marine Patrol Unit, remove him from the SWAT team, and dramatically change the terms and conditions of his employment. Baluja pleaded that Chief Hudak asked whether his deployment orders were voluntary or mandatory, implying

40

that he would be displeased if Baluja took military leave that he viewed as unnecessary. *See* A9 (Doc. 1 at 5); A50-A51 (Doc. 14 at 4-5). Chief Hudak then expressed that "if Baluja continued to leave on military duty, Chief Hudak intended to replace his position on the Marine Patrol Unit." *Id.* After Baluja continued to deploy in the uniformed services, the CGPD transferred him from the Marine Patrol Unit to the Uniformed Patrol Division, just as Chief Hudak threatened he would. A9 (Doc. 1 at 5); A51 (Doc. 14 at 5). Baluja therefore pleaded facts establishing that Chief Hudak expressly "conditioned [the CGPD's] decision on" Baluja's military service. *Coffman*, 411 F.3d at 1238.

Baluja also alleged that the City displayed hostility to his military status in other ways. Strikingly, Baluja alleged that Chief Hudak contacted his military chain of command to request his excusal from upcoming military duty. A12 (Doc. 1 at 8). Chief Hudak also requested Baluja's military records on multiple occasions, causing Baluja to receive a reprimand. A12-A13; A23-A24 (Doc. 1 at 8-9, 19-20). The CGPD refused to allow Baluja to prepare properly for deployment, *see* A10 (Doc. 1 at 6), and placed him on administrative leave and probationary status when he returned, *see* A12-A13 (Doc. 1 at 8-9). This series of actions demonstrating animus toward Baluja's military status shows that his service represented a motivating factor in the City's decision to transfer him from the Marine Patrol Unit, as well.

In this context, the City's choice to remove Baluja from the SWAT team without explanation similarly supports Baluja's discrimination claims. *See* A18-A19 (Doc. 1 at 14-15). The decision was wholly "inconsisten[t]," *Coffman*, 411 F.3d at 1238, with Baluja's recent performance review assigning him a "rating of 95/Very Good" and describing him as "'highly trained' and 'very dependable.'" A17-A18 (Doc. 1 at 13-14). Baluja also pleaded that the City did not readily remove officers from the SWAT team. For example, another SWAT team member who did not serve in the uniformed services negligently discharged his firearm in the presence of other officers and was not suspended or removed from the unit. A19 (Doc. 1 at 15). Baluja thus stated a claim that the City removed him from the SWAT team and revoked related privileges as a result of his service in the National Guard.

Baluja also alleged that the CGPD prevents servicemembers from bidding on work shifts because of their absence for military service. *See* A13 (Doc. 1 at 9); A52 (Doc. 14 at 6). USERRA specifically defines a "benefit of employment" as "the opportunity to select work hours or location of employment." 38 U.S.C. § 4303(2). It is therefore unlawful for the CGPD to bar servicemembers from participating in that process while permitting non-servicemembers to do so, and he may receive injunctive relief for that employment practice as well.

***Entitlement To Relief.*** Baluja's complaint establishes that—assuming his claims are true—he is entitled to several USERRA remedies. USERRA provides

42

multiple forms of relief for the kinds of harms Baluja alleges, and his pleadings easily satisfy those remedial standards.

First, Baluja is entitled to an award of unpaid wages and benefits that CGPD has never corrected. USERRA authorizes courts to "require the employer to compensate" an employee "for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter," plus interest. 38 U.S.C. § 4323(d)(1)(B), (C).  Victims of employment discrimination are entitled to "remedies . . . sufficient to restore them 'to a position where they would have been were it not for the unlawful discrimination.'" *Welborn v. Reynolds Metals Co.*, 868 F.2d 389, 391 (11th Cir. 1989) (quoting *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 764 (1976)).  Courts have long recognized that "the 'rightful place' doctrine governs the judicial remedies" for employment discrimination claims.  *Myers v. Gilman Paper Corp.*, 544 F.2d 837, 856 (5th Cir. 1977).  Baluja is therefore entitled to wages for the more advanced position—such as sergeant or lieutenant—he would have obtained absent CGPD's discrimination against him.  A57 (Doc. 14 at 11). Those are classic "loss[es] of wages or benefits" remediable under § 4323(d)(1)(B), and USERRA now expressly allows up to three-percent interest on such awards. Baluja is also entitled to missing pension benefits, as well as pay and retirement contributions spanning (at least) August 4, 2023 through May 27, 2024, including the deployment period that the City's audit simply skipped.  *Id.*

Second, Baluja is entitled to at least $50,000 in damages because the CGPD knowingly violated USERRA. USERRA allows an additional award where an employer "knowingly" fails to comply with the statute's requirements, in an amount equal to the lost wages and benefits (plus interest) or a statutory floor of $50,000—whichever is greater. 38 U.S.C. § 4323(d)(1)(D). Thus even if an employer pays an employee all of the lost wages and benefits (plus interest) it withheld before the employee brings a lawsuit, if the USERRA violation was "knowing" the employee is still entitled to at least $50,000 in statutory damages. The allegations support a finding that the CGPD "knowingly failed to comply with the provisions" of USERRA, entitling Baluja to those damages. 38 U.S.C. § 4323(d)(1)(D). Baluja repeatedly put the City on notice of its USERRA obligations and of specific violations—both as to discriminatory transfers and as to unlawful leave and reemployment practices—yet the City persisted in the same conduct and still has not corrected his pay. *See, e.g.*, A7; A14 A23; A33; A53; A57 (Doc. 1 at 3, 10, 19, 29; Doc. 14 at 7, 11). That is the paradigm of a "knowing" or willful violation. On these allegations, a factfinder could readily conclude that the CGPD's ongoing failure to restore Baluja to the position he would occupy but for his military service, coupled with repeated disregard of his complaints and governing law, warrants at least the statutory minimum of $50,000 in additional liquidated damages.

Third, because many of the violations are ongoing, Baluja is entitled to injunctive and declaratory relief. USERRA authorizes courts to "require the employer to comply with the provisions of this chapter," 38 U.S.C. § 4323(d)(1)(A), and directs that courts "shall use, in any case in which the court determines it is appropriate, its full equity powers, including temporary or permanent injunctions" to "vindicate fully the rights or benefits of persons under" USERRA. *Id.* § 4323(e)(1). Furthermore, injunctive relief may not be denied simply because damages are available. *Id.* § 4323(e)(3). Here, Baluja remains employed by the CGPD and alleges that he is still stuck in a less desirable uniformed patrol position, still excluded from the Marine Patrol Unit and SWAT team, and still subject to policies that misclassify and underpay military leave, improperly require use of accrued leave, and impose unlawful "administrative leave" and probationary status upon reemployment. *See, e.g.*, A51-A54 (Doc. 14 at 5-8). USERRA thus permits— and its text favors—injunctive relief ordering reinstatement to the Marine Patrol Unit and SWAT team (or comparable positions that reflect the "escalator" principle), restoration of associated privileges and overtime opportunities, correction of pension records and seniority, and cessation and reform of the City's unlawful military-leave and reemployment practices. Even if the district court determines that reinstatement is unavailable, Baluja is entitled to front pay as an equitable remedy. *See, e.g., U.S.*

*E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 619 (11th Cir. 2000) (holding that front pay under Title VII is an equitable remedy).

Finally, even if this Court were to accept the City's (incorrect) premise that all of Baluja's financial losses have already been corrected, and he is entitled to no equitable relief or liquidated damages, he would still be entitled to at least nominal relief for completed USERRA violations. Nominal damages fall within the court's authority under 38 U.S.C. § 4323(d)(1)(A) to enforce compliance with USERRA and vindicate federal rights. Courts have long understood similar provisions in federal civil-rights statutes to permit declaratory judgments, injunctions, and nominal damages, even where no compensable monetary loss is shown. *See, e.g.*, *Uzuegbunam*, 592 U.S. at 289-90 (holding that 42 U.S.C. § 1983's authorization of an "action at law" against any person "liable to the party injured" encompasses nominal damages for a completed violation).

### B. Coral Gables Violated Its Reemployment Obligations By Failing to Properly Reemploy Baluja Following Absence from Employment.

Coral Gables violated Baluja's reemployment rights under USERRA, 38 U.S.C. § 4313 and § 4316. First, the City failed to place Baluja in an equivalent position to that he would have held absent his military service. *See* 38 U.S.C. § 4313(a), (b). The City never determined that Baluja could not perform the position's essential duties and was therefore no longer qualified for the position. *See*

46

*id.* §§ 4313(a)(3), 4303(9).  Second, the City placed "additional prerequisites" on Baluja's reemployment beyond those established in USERRA.  *Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 442 (6th Cir. 2008).  Third, the department failed to "promptly" reemploy him following his military service by placing him on administrative leave.  38 U.S.C. § 4313(a); *see also Harwood v. Am. Airlines, Inc.*, 963 F.3d 408, 417 (4th Cir. 2020).

USERRA requires employers to promptly reinstate returning servicemembers to the position they would have held but for their military service, with the seniority, status, and benefits they would have attained.  38 U.S.C. §§ 4313, 4316(a); 20 C.F.R. § 1002.191.[6]  Employers are not permitted to impose additional screening, recertification, probation, or other hurdles *because* the employee was absent for military service.  *See* 20 C.F.R. § 1002.7(b); *Petty* 538 F.3d at 442 (holding that once USERRA's own prerequisites for reemployment are met, no additional prerequisites may be imposed).  Baluja pleaded that he was absent because of military orders, that he notified the City of his military service obligations, and that he timely notified the City of his intent to return to work following his military service obligations.  *See* A49; A51 (Doc. 14 at 3, 5).  The City was therefore required to reemploy him.

The complaint also shows that the CGPD repeatedly discussed and challenged his orders, contacted his military chain of command, and took adverse action in

---

[6] This is sometimes referred to as the "escalator principle."

direct response to his deployments—confirming the City's actual notice. Instead of promptly reinstating him, the City placed him on administrative leave and probationary status after his return and refused to restore him to the Marine Patrol Unit or SWAT team, denying him seniority-based assignments, overtime, and pension benefits that USERRA's escalator principle guarantees. A51-52; A53-54 (Doc. 14 at 5-6, 8-9). At every juncture, CGPD's actions violated the basic statutory commands that Baluja be restored to "the position of employment in which [he] would have been employed if [his] continuous employment . . . had not been interrupted by such service," 38 U.S.C. § 4313(a)(2)(A), and that it restore him to the full seniority, pay, status, and other benefits he "would have attained if [he] had remained continuously employed," 38 U.S.C. § 4316(a). These allegations easily state a reemployment-rights violation. *See Petty*, 538 F.3d at 436-37, 442-44.

Coral Gables also violated Baluja's USERRA rights by failing to provide him prompt reemployment. USERRA mandates prompt reemployment. 38 U.S.C. § 4313(a); *see also Harwood*, 963 F.3d at 417 (holding that employer failed to promptly re-employ servicemember by delaying two months); 20 C.F.R. § 1002.181 (requiring reemployment within two weeks "[a]bsent unusual circumstances"). Employers are not permitted to delay reemployment once the prerequisites for reemployment are met. *See* 20 C.F.R. § 1002.32(b); *Petty*, 538 F.3d at 444. The complaint alleges that upon Baluja's return from a 2020 deployment—after being

48

medically cleared at Walter Reed—the CGPD refused to reinstate him promptly and instead placed him on unilateral "administrative leave" for a month without justification.  A12 (Doc. 1 at 8).  When it finally allowed him to resume work, the CGPD imposed probationary status, required accompaniment by a Field Training Officer, and directed daily observation reports—requirements not justified by any performance issue.  A13 (Doc. 1 at 9). These allegations describe precisely the kind of conditions on reemployment that USERRA forbids.  USERRA does not permit an employer to place a returning servicemember on paid or unpaid administrative leave, probation, or shadow supervision merely because the employer questions his military absences or desires additional documentation.  Those obstacles flout the statutory command of "prompt reemployment" and state a claim for relief.

## C.    Coral Gables' Leave Policies Independently Violate USERRA.

Coral Gables also violated USERRA, 38 U.S.C. § 4316(d), by requiring employees to draw down accrued personal leave while away on military orders. Baluja alleged that on multiple occasions, the city has required him to use personal leave while on military leave. *See, e.g.*, A14-A15 (Doc. 1 at 10-11); A52-A53 (Doc. 14 at 6-7).  This practice violates USERRA's plain text, which states that "[n]o employer may require" an individual whose employment is interrupted by service in the uniformed services "to use vacation, annual, or similar leave during such period

49

of service." 38 U.S.C. § 4316(d).  Even if the City returned this leave in response to Baluja's demand letter, *see* A15 (Doc. 1 at 11), he may still be awarded injunctive relief to prevent further statutory violations, *see* 42 U.S.C. § 4323(d)(1)(A), (e)(1).

\* \* \* \* \*

Baluja is exactly the kind of servicemember USERRA was enacted to protect: a long-serving public employee and National Guard member who alleges that his employer punished him for his military service, denied him the employment benefits and status he would otherwise enjoy, and adopted practices that deter military leave. He has suffered concrete financial and other harms traceable to the City's conduct, those harms are redressable through USERRA's broad remedial scheme, and his well-pleaded allegations state multiple claims for relief.

50

## CONCLUSION

The Court should reverse the decision below.

Dated: November 26, 2025

Respectfully submitted,

*/s/ John V. Hoover*
Andrew T. Tutt
John V. Hoover
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999
jack.hoover@arnoldporter.com

*Counsel for Appellant Michael Baluja*

51

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing brief was filed electronically on November 26, 2025 and will therefore be served electronically upon all counsel.

*/s/ John V. Hoover*
John V. Hoover

*Counsel for Appellant Michael Baluja*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) and Eleventh Circuit Rule 32-4, because it contains 9,795 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), according to the word count feature of Microsoft Word. This document complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), and Eleventh Circuit Rule 32-3, because it has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

*/s/ John V. Hoover*
John V. Hoover

*Counsel for Appellant Michael Baluja*