# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

CASE NO. 25-13258

---

MICHAEL BALUJA

Appellant/Plaintiff

v.

CITY OF CORAL GABLES

Appellee/Defendant

---

On Appeal from the United States District Court
for the Southern District of Florida
Miami Division
Case No. 1:24-cv-23470-JEM
(The Hon. Jose E. Martinez
United States District Judge)

---

**RESPONSE BRIEF OF APPELLEE
CITY OF CORAL GABLES**

---

**RUIZ TRIAL LAW, PLLC**

Fabian A. Ruiz, Esq.
Florida Bar No.: 117928
fabian@ruiztriallaw.com
9100 S. Dadeland Blvd., Ste. 1500
Miami, Florida 33156
Telephone: (866) 784-9247
Facsimile: (866) 487-2599
*Counsel for Appellee*

No. 25-13258

*Michael Baluja v. City of Coral Gables*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. Rule 26.1-1, Appellee, City of Coral Gables, submits the following alphabetical list of the trial judge, all attorneys, persons, associations of persons, firms, partnerships and corporations with any known interest in the outcome of this appeal:

- Arnold & Porter Kaye Scholer LLP (Counsel for Appellant, Michael Baluja)

- Baluja, Michael (Appellant)

- City of Coral Gables, FL (Appellee)

- Hoover, John V. (Counsel for Appellant, Michael Baluja)

- Klock, Susan E. (Counsel for Appellant, Michael Baluja)

- Martinez, Hon. Jose E. (U.S.D.J., Southern District of Florida)

- Rasco Klock Perez & Nieto, P.L. (Counsel for Appellant, Michael Baluja)

- Reid, Hon. Lisette M. (U.S.M.J., Southern District of Florida)

- Ruiz, Fabian A. (Counsel for Appellee, City of Coral Gables, FL)

- Ruiz Trial Law, PLLC (Counsel for Appellee, City of Coral Gables, FL)

- Tutt, Andrew T. (Counsel for Appellant, Michael Baluja)

i

No. 25-13258

*Michael Baluja v. City of Coral Gables*

## CORPORATE DISCLOSURE STATEMENT

In accordance with Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, Appellee

City of Coral Gables states that it is a public entity, and no publicly held corporation

owns 10% or more of City of Coral Gables.

No. 25-13258
*Michael Baluja v. City of Coral Gables*

## STATEMENT REGARDING ORAL ARGUMENT

City of Coral Gables does not believe that the issues before this Court on appeal involve questions of first impression. However, City of Coral Gables is prepared to move forward with oral argument should the Court decide it is necessary or in the best interest of the parties.

No. 25-13258
*Michael Baluja v. City of Coral Gables*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................................i

CORPORATE DISCLOSURE STATEMENT ...................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS...................................................................................iv

TABLE OF AUTHORITIES ............................................................................vi

STATEMENT OF JURISDICTION...................................................................1

STATEMENT OF THE ISSUES.......................................................................2

STATEMENT OF THE CASE AND STATEMENT OF FACTS ...........................3

    I. PROCEDURAL HISTORY ......................................................................3

        A. Baluja's First Complaint ......................................................................3

        B. Baluja's Second Complaint ..................................................................7

        C. Baluja's Third Complaint.....................................................................11

    II. STATEMENT OF FACTS ......................................................................15

        A. Factual Allegations In Baluja's Third Complaint ...........................15

        B. Baluja's Selective Reliance On Prior Complaints Should Be Disregarded................................................................................................17

STANDARD OF REVIEW ..............................................................................22

SUMMARY OF THE ARGUMENT ..................................................................23

ARGUMENT .................................................................................................25

    I.   THE DISTRICT COURT PROPERLY DISMISSED BALUJA'S USERRA CLAIM. ..................................................................................25

No. 25-13258
*Michael Baluja v. City of Coral Gables*

A. Baluja Failed To Establish Standing To Bring A Claim Under USERRA..................................................................................27

B. Baluja Failed To State A Claim Under USERRA ...........................38

II. BALUJA WAIVED THE ARGUMENT HE RAISES ON APPEAL WITH REGARD THE APPLICABILITY OF THE SUPREME COURT'S *MULDROW* DECISION TO HIS USERRA CLAIM .........48

III. EVEN IF BALUJA HAD NOT WAIVED HIS ARGUMENTS UNDER *MULDROW*, WHICH HE DID, THE RESULT WOULD BE THE SAME.................................................................................51

A. The Supreme Court's decision in *Muldrow* was limited to claims of discrimination under Title VII...............................................52

B. The clear facts in *Muldrow*, wherein she was transferred, are not the same as inexplicit facts alleged by Baluja.............................54

IV. DISMISSAL WITH PREJUDICE WAS APPROPRIATE ....................56

CONCLUSION ....................................................................................56

CERTIFICATE OF COMPLIANCE.......................................................57

CERTIFICATE OF SERVICE ..............................................................58

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Annarumma v. City of High Springs Fla.,*
   846 F. App'x 776 (11th Cir. 2021) ...................................................................36

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..........................................................................38, 41, 42

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..........................................................................38, 39, 40

*Brathwaite v. Sch. Bd. of Broward Cnty., Fla.,*
   763 Fed. Appx. 856 (11th Cir. 2019)...............................................................27

*Carter v. United Parcel Serv., Inc.,*
   No. 3:13-CV-2802-B, 2014 WL 1386351, *1 (N.D. Tex. Apr. 8, 2014)...........26

*Church v. City of Huntsville,*
   30 F.3d 1332 (11th Cir. 1994) ........................................................................37

*City of Miami v. Fraternal Ord. of Police Lodge No. 20 of City of Miami,*
   378 So. 2d 20 (Fla. 3d DCA 1979)..................................................................36

*Coffman v. Chugach Support Servs., Inc.,*
   411 F.3d 1231 (11th Cir. 2005) ......................................................................25

*Cole v. U.S. Att'y Gen.,*
   712 F.3d 517 (11th Cir. 2013) ........................................................................49

*Davila v. Delta Air Lines, Inc.,*
   326 F. 3d 1183 (11th Cir. 2003) .....................................................................23

*Davis v. Coca-Cola Bottling Co. Consol.,*
   516 F.3d 955 (11th Cir. 2008) ........................................................................41

*Davis v. Town of Lake Park, Fla.,*
   245 F.3d 1232, 1238 (11th Cir. 2001) ............................................................27

*Dees v. Hyundai Motor Mfg. Alabama, LLC,*
   368 Fed. App'x 49 (11th Cir. 2010) ................................................................25

No. 25-13258
*Michael Baluja v. City of Coral Gables*

*Dees v. Hyundai Motor Mfg. Alabama, LLC,*
  605 F.Supp.2d 1220 (M.D. Ala. 2009) ...................................................26, 28, 30

*Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER,*
  463 F.3d 1210 (11th Cir. 2006) ...........................................................................17

*Edwards v. Prime, Inc.,*
  602 F. 3d 1276 (11th Cir. 2010) ....................................................................22, 23

*Enola Contracting Servs., Inc. v. URS Group, Inc.,*
  No. 5:08cv2-RS-EMT, 2008 WL 506324, at *1 (N.D. Fla. Feb. 21, 2008).......38

*Epperson v. Hertz Corp.,*
  No. 2:24-CV-383-SPC-DNF, 2025 WL 2855368, at **1
  (M.D. Fla. Oct. 8, 2025) .....................................................................................27

*Fannin v. United Space All., LLC,*
  392 F. App'x 788 (11th Cir. 2010) .......................................................43, 48, 55

*Fernandez v. School Board of Miami-Dade County,*
  201 F. Supp. 3d 1353 (S.D. Fla. 2016).........................................................17, 18

*Gross v. FBL Fin. Servs., Inc.,*
  557 U.S. 167 (2009)..............................................................................................52

*Hansen v. City of New York,*
  No. 24-CV-2808 (JMF), 2025 WL 588119, at *1
  (S.D.N.Y. Feb. 24, 2025).....................................................................................53

*Herrera v. City of Hialeah, Fla.,*
  No. 21-14271, 2023 WL 238999, at *1 (11th Cir. Jan. 18, 2023).....................25

*In re Egidi,*
  571 F.3d 1156 (11th Cir. 2009) ..........................................................................49

*KENNY GORIS, Plaintiff, v. DELOITTE, Defendant.,*
  No. 25 CIV. 1532 (JPC), 2026 WL 621575, at *1
  (S.D.N.Y. Mar. 5, 2026) ......................................................................................20

*Kieffer v. Fitness of Adrian, LLC,*
  2017 WL 3581315, at *1 (E.D. Mich. Aug 18, 2017)........................................40

No. 25-13258
*Michael Baluja v. City of Coral Gables*

*Leal v. Ga. Dep't of Corr.,*
   254 F.3d 1276 (11th Cir. 2001) ..........................................................................48

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)...........................................................................................27

*Lukie v. MetLife Grp., Inc.,*
   No. 22-10967, 2024 WL 4471109, at *1 (11th Cir. Oct. 11, 2024) ..................28

*Muldrow v. City of St. Louis, Missouri,*
   601 U.S. 346 (2024)..............................................2, 9, 13, 15, 24, 27, 31, 48-55

*Myrick v. City of Hoover, Alabama,*
   69 F.4th 1309 (11th Cir. 2023) ..........................................................................47

*Norris v. Glassdoor, Inc.,*
   No. 2:17-cv-00791, 2018 BL 249874, 2018 LRRM 249874, 2018
   WL 3417111 (S.D. Ohio July 13, 2018)............................................................40

*Onishea v. Hopper,*
   171 F.3d 1289 (11th Cir. 1999) .........................................................................48

*Peyton v. Grant,*
   No. 24-CV-21649, 2026 WL 323038, at *1 (S.D. Fla. Feb. 6, 2026)...............49

*Posin v. Cnty. of Orange,*
   No. SACV150120AGJCGX, 2016 WL 5858706, at *1
   (C.D. Cal. Jan. 18, 2016) ..................................................................................27

*Proctor & Gamble Defense Corp. v. Bean,*
   146 F.2d 598 (5th Cir. 1945) .............................................................................17

*Republic Steel Corp. v. Maddox,*
   379 U.S. 650 (1965)...........................................................................................36

*Richards v. Canyon Cnty,*
   No. CV 12-00424-S-REB, 2014 WL 1270665, at *1
   (D. Idaho Mar. 26, 2014) ..............................................................................29, 30

*Sapuppo v. Allstate Floridian Ins. Co.,*
   739 F.3d 678 (11th Cir. 2014) .......................................................................48, 49

No. 25-13258
*Michael Baluja v. City of Coral Gables*

*Silvera v. Orange County School Bd.,*
   244 F. 3d 1253 (11th Cir. 2001) ..................................................................39

*Singh v. U.S. Att'y Gen.,*
   561 F.3d 1275 (11th Cir. 2009) ...................................................................49

*Singleton v. Wulff,*
   428 U.S. 106 (1976)...............................................................................50, 51

*Stanley v. City of Sanford, Fla.,*
   606 U.S. 46 (2025)..................................................................................39, 48

*Torres v. Texas Department of Public Safety,*
   142 S. Ct. 2455 (2022)...........................................................................6, 9, 10

*Walker v. Baptist Health Sys., Inc.,*
   No. 3:25-CV-588-MMH-SJH, 2025 WL 3902262, at *1
   (M.D. Fla. Dec. 15, 2025)..............................................................................28

*Ward v. United Parcel Serv.,*
   80 F. App'x 735 (11th Cir. 2014) .................................................................25

*Williams v. Mallet,*
   707 F.Supp. 3d 1340 (S.D. Fla. 2023)...........................................................49

## Statutes

28 U.S.C. § 1291 ................................................................................................1

28 U.S.C. § 1331 ................................................................................................1

Uniformed Services Employment and Reemployment Rights Act of 1994
   38 U.S.C § 4301e *et seq*............................................ 16, 18-27, 29-31, 34-38, 40,
   *Continued* ..................................................41, 43, 44, 47-49, 51-54, 56

   38 U.S.C. § 4316(a) ......................................................................................44

   38 U.S.C. § 4316(b)(1)(B).............................................................................43

Florida Uniformed Servicemembers Protection Act
   Fla. Stat. § 250.80 *et seq*................................................ 3, 4, 5, 6, 8, 10, 11, 20

Servicemembers Civil Relief Act
50 U.S.C. §§ 3901 *et seq.*................................................................7, 8, 10, 11

**Other Authorities**

Eleventh Circuit Rule of Appellate Procedure 26.1-1 .......................................... i, ii

Federal Rule of Appellate Procedure 26.1 .......................................................... i, ii

Federal Rule of Appellate Procedure 32(a)(5)......................................................57

Federal Rule of Appellate Procedure 32(a)(6)......................................................57

Federal Rule of Appellate Procedure 32(a)(7)(B) .................................................57

Federal Rule of Civil Procedure Rule 8................................................................39

Federal Rule of Civil Procedure Rule 8(a)(2).......................................................40

Federal Rule of Civil Procedure Rule 12(b)(6) .................................................38, 40

20 C.F.R. § 1002.150(b) ....................................................................................47

20 C.F.R. 1002.312 ...........................................................................................26

Black's Law Dictionary (12th ed. 2024)..............................................................53

No. 25-13258
*Michael Baluja v. City of Coral Gables*

## STATEMENT OF JURISDICTION

This appeal is from an order of the United States District Court for the Southern District of Florida ("District Court") granting the City of Coral Gables' (the "City") Motion to Dismiss Michael Baluja's ("Baluja") Amended Complaint ("Motion to Dismiss Baluja's Third Complaint"). [DE 25, Case 2]. The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1291, as Baluja seeks appellate review of a final order granting the City's Motion to Dismiss Baluja's Third Complaint with prejudice.

1

No. 25-13258
*Michael Baluja v. City of Coral Gables*

## STATEMENT OF THE ISSUES

The issues before the Court are as follow:

1.  Did the District Court properly grant the City's Motion to Dismiss Baluja's Third Complaint [DE 25, Case No. 1:24-23470-CIV-MARTINEZ ("Case 2")]?

2.  Must the District Court have accepted as true the allegations contained in Baluja's Third Complaint and construed them in the light most favorable to him when they were not well-pleaded because Baluja omitted critical facts, failed to reconcile the factual allegations in his Third Compliant with those alleged in his prior complaints, and otherwise failed to "remedy the pleading deficiencies the Court identified in its Order dismissing Plaintiff's [Second] Complaint"?

3.  Did Baluja waive the arguments he raises on appeal regarding the application of *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024) to his claim when he did not sufficiently develop the arguments before the District Court?

2

## STATEMENT OF THE CASE AND STATEMENT OF FACTS

### I.    PROCEDURAL HISTORY

#### A.    Baluja's First Complaint

##### 1.    Baluja Filed His First (Verified) Complaint in the First Case.

On May 16, 2023, Baluja filed his first complaint in the Eleventh Judicial Circuit in and for Miami-Dade County, FL ("State Court"), against the City, and it Police Department, Chief of Police Edward Hudak, Lieutenant John Carrasco, Sergeant Alejandro Escobar, City Manager Peter Iglesias, Director of Human Resources Raquel Elejabarrieta, and Director of Human Resources Karla Green (Baluja's "First Complaint") [DE 1-1, Case No. 1:23-cv-22331-KMW/Reid ("Case 1")].  In his First Complaint, which was verified and which the City removed to the U.S. District Court for the Southern District of Florida, Baluja alleged that all of the foregoing Defendants engaged in acts that violated the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C § 4301e *et seq.* ("USERRA"), the Florida Uniformed Servicemembers Protection Act, § 250.80, *et seq.,* Florida Statutes ("FUSPA"), and he also brought a claim for intentional infliction of emotional distress based on a City Sergeant performing a wellness check on him, which Baluja also alleged was "committed as a result of [his] military status, [in] violation of . . . USERRA." [*Id*. at 16, Case 1].

3

## 2.    The City Moved to Dismiss Baluja's First Complaint.

On July 5, 2023, the Defendants to the First Complaint filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. [DE 6, Case 1]. In their Motion to Dismiss Baluja's First Complaint, the Defendants argued that Baluja's First Complaint should be dismissed because it was an improper "shotgun" pleading that conflated multiple claims and defendants without clearly identifying which individual (and which actions) were intended to support which claims, improperly attempted to sue individual defendants that could not be sued, and attempted to bring a claim under FUSPA, for which a private right of action does not exist and would otherwise be barred by sovereign immunity under Florida law. [*Id*. at 2-3, Case 1]. Defendants further argued that Baluja lacked standing to bring a claim under USERRA and FUSPA because he expressly alleged in his First Complaint, which was verified, that the monetary losses he alleged to have suffered were already paid back to him by the City and therefore could not be redressed by the Court. [*Id*., Case 1].  Finally, the Defendants to the First Complaint argued that Baluja failed to state a claim for discrimination under USERRA or FUSPA because he failed to allege facts sufficient to establish any cognizable injury, adverse employment action and, importantly, that any of the conduct alleged in his First Complaint occurred because of his membership in the military. [*Id*., Case 1].

### 3. Baluja Filed His Response to the City's Motion to Dismiss His First Complaint.

On August 11, 2023, Baluja filed his Response to the City's Motion to Dismiss his First Complaint [DE 15, Case 1]. Baluja devoted the majority of his Response to the City's Motion to Dismiss his First Complaint to arguing that the City was not entitled to sovereign immunity with respect to Baluja's USERRA claim (which, as explained below, the City did not argue), and that the case should be remanded to State Court (despite USERRA being a federal statute and, thus, clearly arising under federal law). [*Id*. at 2, Case 1].

### 4. The City Filed its Reply in Support of its Motion to Dismiss Baluja's First Complaint.

On August 18, 2023, the City filed its Reply in support of its Motion to Dismiss Baluja's First Complaint. [DE 16, Case 1]. In its Reply, the City argued that, in his Response, Baluja failed to address several of the bases under which the Defendants to the First Complaint (including the City) moved to dismiss, including: (1) Baluja's First Complaint being a shotgun pleading; (2) the individually named defendants' argument that they should be dismissed from the case because they were being sued in their official capacities; (3) the argument that FUSPA does not create a private cause of action; and (4) the argument that Baluja's claim for intentional infliction of emotional distress should be dismissed because it falls well short of establishing conduct that is "so outrageous in character, and so extreme in degree,

as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[,]" as required. [*Id.* at 1, 2, Case 1]. The City also addressed Balua's misplaced reliance on *Torres v. Texas Department of Public Safety*, 142 S. Ct. 2455 (2022), to which Baluja cited for the proposition that the City was not entitled to sovereign immunity with respect to Baluja's USERRA claim and that the District Court should have remanded Baluja's First Complaint to State Court. [*Id.* at 3-9, Case 1]. As the City made clear, it never argued being entitled to sovereign immunity from liability and suit under the Eleventh Amendment of the U.S. Constitution with respect to Baluja's USERRA claim, and instead only argued being entitled to sovereign immunity from liability and suit under the Florida Constitution with respect to Baluja's FUSPA claim. [*Id.* at 4, Case 1]. Finally, the City reiterated that Baluja had failed to meet his burden of alleging a claim for discrimination under USERRA, and lacked standing to bring such a claim. [*Id.* at 9-10, Case 1].

### 5.    Baluja Voluntarily Dismissed His First Complaint.

On December 21, 2023, prior to the District Court ruling on the City's Motion to Dismiss Baluja's First Complaint, Baluja voluntarily dismissed his First Complaint without prejudice. [DE 26, Case 1].

### B.    Baluja's Second Complaint

#### 1.    Baluja's Second Complaint (First Complaint in the Second Case).

On September 9, 2024, Baluja filed his Second Complaint in the Southern District of Florida (Baluja's "Second Complaint"). [DE 1, Case 2].  On November 7, 2024, the City moved to transfer Case 2 to the docket of Case 1, based on the Second Complaint involving the same subject matter as the First Complaint. [DE 7, Case 2].  On November 8, 2024, Baluja filed his response in opposition to the City's Motion to Transfer. [DE 8, Case 2].  On November 15, 2024, the Court denied the City's Motion to Transfer. [DE 10, Case 2].

In his Second Complaint, Baluja dropped all of the named defendants identified in the First Complaint, except for the City. [DE 1, Case 2]. Notwithstanding, Baluja renewed all of the allegations in his First Complaint, and added a claim for a generalized violation of the Servicemembers Civil Relief Act 50 U.S.C. §§ 3901 et seq. ("SCRA"). [*Id.*].  However, most, if not all, of the defects raised by the City in its Motion to Dismiss Baluja's First Complaint were nevertheless re-pleaded by Baluja in his Second Complaint. [*Id.*].

#### 2.    The City Moved to Dismiss Baluja's Second Complaint.

On November 8, 2024, the City filed its Motion to Dismiss Baluja's Second Complaint. [DE 9, Case 2].  In its Motion to Dismiss Baluja's Second Complaint, the City argued that: (1) Baluja's Second Complaint continued to be a shotgun

pleading that failed to identify which facts supported which claims; (2) FUSPA does not create a private cause of action; (3) Baluja lacked standing to bring a claim under FUSPA and/or USERRA based on the allegations in his Second Complaint; (4) even if he did have standing, Baluja's claim under FUSPA and USERRA failed because he failed to allege sufficient facts to establish: (a) that he suffered an adverse employment action; (b) that any such adverse employment action was motivated by his membership or service in the uniformed services; and (c) that similarly-situated employees who were not military members were treated more favorably than he was; (5) Baluja failed to allege any facts that the City had engaged in an act that violated the specifically enumerate provisions of the SCRA; and (6) Baluja failed to state a claim for IIED. [*Id*. at 1-2, Case 2].

### 3. Baluja Filed His Response to the City's Motion to Dismiss His Second Complaint.

On November 22, 2024, Baluja filed his Response to the City's Motion to Dismiss his Second Complaint. [DE 11, Case 2]. In his Response to the City's Motion to Dismiss his Second Complaint, Baluja argued that the allegations in his Second Complaint identified acts by the City that supported his claims. [*Id*. at 1, Case 2]. Additionally, and despite the City having made it clear in its Reply in Support of its Motion to Dismiss Baluja's First Complaint that it was not claiming entitlement to sovereign immunity under the Eleventh Amendment of the U.S.

Constitution, Baluja nevertheless renewed his argument that the City was not entitled to such sovereign immunity pursuant to the Supreme Court's *Torres* decision, and (despite he himself having filed his Second Complaint in federal court) Baluja argued that the District Court should "determine that it [sic] subject matter jurisdiction pursuant to the explicit language in USERRA, the matter should be remanded to state court." [*Id*. at 2, Case 2].

Importantly, despite the U.S. Supreme Court having decided *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024) on April 17, 2024, which was over seven (7) months prior to the date on which Baluja filed his Response to the City's Motion to Dismiss his Second Complaint, Baluja neither cited to, nor analyzed, *Muldrow* in his Response to the City's Motion to Dismiss his Second Complaint.

### 4.     The City Filed its Reply in Support of its Motion to Dismiss Baluja's Second Complaint.

On November 29, 2024, the City filed its Reply in support of its Motion to Dismiss Baluja's Second Complaint. [DE 12, Case 2].  In its Reply, the City once again argued that Baluja's Response failed to address several of the bases under which the City moved to dismiss his Second Complaint, including: (1) Baluja's Second Complaint being a shotgun pleading; (2) Baluja not being able to maintain a claim under the SCRA because he failed to allege that the City engaged in an act that violated the limited, and specifically enumerated, provisions of the SCRA; and

(3) Baluja's claim for intentional infliction of emotional distress requiring dismissal because it continued to fall well short of establishing conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[,]" as required. [*Id*. at 1, Case 2].  The City also repeated its arguments regarding Balua's misplaced reliance on *Torres* to support his position that the City was not entitled to sovereign immunity with respect to Baluja's USERRA claim and in support of his position that the District Court should have remanded Baluja's Second Complaint to State Court. [*Id*. at 2-9, Case 2].  The City restated that it had never argued being entitled to sovereign immunity from liability and suit under the Eleventh Amendment of the U.S. Constitution with respect to Baluja's USERRA claim, and had instead only argued being entitled to sovereign immunity from liability and suit under the Florida Constitution with respect to Baluja's FUSPA claim. [*Id*. at 2, Case 2].  Finally, the City reiterated that Baluja had not met his burden of alleging a claim for discrimination under USERRA, and lacked standing to bring such a claim. [*Id*. at 9-10, Case 2].

### 5.    The District Court Dismissed Baluja's Second Complaint.

On March 6, 2025, the District Court granted the City's Motion to Dismiss Baluja's Second Complaint. [DE at 13, Case 2].  With respect to Baluja's USERRA claim, the Court agreed that Baluja lacked standing because he expressly alleged

having received pay corrections from the City and the Second Complaint did "not make clear which alleged injuries have or have not been addressed by the City." [*Id.* at 3, Case 2]. Specifically, the Court held that, "[a]s it is unclear which allegations - if any - are redressable under USERRA, Baluja fails to establish standing." [*Id.*]. The District Court also held that Baluja failed to sufficiently allege a violation of the SCRA; that FUSPA did not create a private cause of action and, even if it did, that the City is immune from a FUSPA claim on the basis of sovereign immunity under the Florida Constitution; and that Baluja fail to state a claim for IIED. [*Id.* at 3-6, Case 2].

### C.     Baluja's Third Complaint

#### 1.     Baluja's Third Complaint (Second Complaint in the Second Case).

On March 25, 2025, Baluja filed his Third Complaint with the District Court. [DE 14, Case 2]. In his Third Complaint, Baluja only renewed his USERRA claim, and did not re-allege his FUSPA, SCRA, and IIED claims. [*Id.*, Case 2].

Despite having dropped all defendants from his Third Compliant except for the City, and all claims except for his claim under USERRA, most, if not all, of the defects raised by the City in its Motion to Dismiss Baluja's First and Second Complaints, remained in Baluja's Third Complaint. [*Id.*]. Importantly, instead of "mak[ing] clear which alleged injuries have or have not been addressed by the

City[,]" which the District Court relied on in finding that Baluja lacked standing with respect to Baluja's Second Complaint, Baluja omitted material facts from his Third Complaint that supported the City's arguments from its two prior motions to dismiss.

### 2.    The City Moved to Dismiss Baluja's Third Complaint.

On April 22, 2025, the City filed its Motion to Dismiss Baluja's Third Complaint because the Third Complaint, like the two complaints that preceded it, was a shotgun pleading and failed to state a claim upon which relief could be granted. [DE 17, Case 2].  In its Motion to Dismiss Baluja's Third Complaint, the City argued that Baluja's USERRA claim should be dismissed because he failed to allege sufficient facts to establish: (a) that he suffered an adverse employment action; (b) that any such adverse employment action was motivated by his membership or service in the uniformed services; and (c) that similarly-situated employees who were not military members were treated more favorably than he was. [*Id*. at 1-2, Case 2]. In connection with such arguments, the City analyzed cases where allegations similar to those Baluja was alleging in his Third Complaint resulted in dismissal for lack of standing. [*Id*. at 5-7, Case 2].

### 3.    Baluja Filed His Response to the City's Motion to Dismiss His Third Complaint.

On June 3, 2025, Baluja filed his Response to the City's Motion to Dismiss his Third Complaint. [DE 23, Case 2].  In his Response to the City's Motion to

Dismiss his Third Complaint, Baluja argued that he does have standing to assert a claim under USERRA, had adequately stated a claim for discrimination under USERRA, and properly alleged causation and comparator evidence in support of his USERRA claim. [*Id*. at 5-9, Case 2].

Once again, despite *Muldrow* having been decided nearly 14 months prior to the date on which Baluja filed his Response to the City's Motion to Dismiss his Third Complaint, Baluja cited to *Muldrow* merely to argue that "a plaintiff alleging discrimination in the terms or conditions of employment 'need not show that the injury satisfies a significance test[,]'" and that *Muldrow* applied to the actions he alleged, without further analysis or explanation as to why (or how) the Supreme Court's *Muldrow* decision applied to Baluja's USERRA claim or the facts alleged in Baluja's Third Complaint (and those omitted therefrom). [*Id*. at 7, 9, Case 2].

### 4. The City Filed Its Reply in Support of its Motion to Dismiss Baluja's Third Complaint.

On June 10, 2025, the City filed its Reply in support of its Third Motion to Dismiss. [DE 24, Case 2]. In its Reply, the City argued that Baluja: (1) failed to address the crux of the City's "shotgun pleading" argument; (2) failed to address the allegations the previously alleged, but omitted, from his Third Complaint in order to survive the City's Motion to Dismiss; (3) failed to allege fact sufficient to establish that any alleged adverse employment action was taken because of his military status;

and (4) failed to allege facts sufficient to establish the existence of similarly-situated employees treated more favorably than he was. [*Id.* at 1-4, Case 2].

### 5. The District Court Granted the City's Motion to Dismiss Baluja's Third Amended Complaint with Prejudice.

On August 20, 2025, the District Court granted the City's Motion to Dismiss Baluja's Third Complaint. [DE 25, Case 2]. In its order, the District Court explained that Baluja's Third Complaint failed to remedy the pleading deficiencies the District Court identified in its order dismissing his Second Complaint, thereby failing to establish that he had standing under USERRA. [*Id.* at 2-3, Case 2]. The District Court correctly pointed out that Baluja intentionally removed references to his pay having been corrected by the City in order to avoid getting his Third Complaint dismissed for lack of standing. [*Id.*, Case 2].

### 6. Baluja Did Not Move for Reconsideration.

On September 17, 2025, Baluja filed his Notice of Appeal to this Court from the District Court's: (1) March 6, 2025 order dismissing Second Complaint without prejudice; and (2) August 20, 2025 order dismissing Baluja's Third Complaint. [DE 26, Case 2].

Prior to filing his notice of appeal, Baluja did not move for reconsideration of the District Court's Order granting the City's Motion to Dismiss Baluja's Third Complaint, and did not attempt to expound on his primary argument on appeal: that

the *Muldrow* decision applied to his USERRA claim, contradicted the arguments the City raised in its various motions and replies, or should have otherwise been considered further by the District Court.

## II.    STATEMENT OF FACTS

### A.    Factual Allegations In Baluja's Third Complaint

The facts in this case, as alleged in the operative Third Complaint, are as follows:

Baluja is employed by the City as an officer in the Coral Gables Police Department ("CGPD") and currently serves in the U.S. Army National Guard. [DE 14 at ¶ 1, Case 2].  Baluja has been an officer with CGPD for over 20 years and served with CGPD's SWAT Team for almost 19 years. [*Id.* ¶ 8, Case 2].  Baluja alleges that the City discriminated against him under USERRA because of his membership in the military, and seeks to recover damages for such alleged violations. [*Id.* at ¶ 5, Case 2].

In granting the City's Motion to Dismiss Baluja's Second Complaint for lack of standing, the District Court cautioned Baluja that its decision was based on his failure to "make clear which alleged injuries have or have not been addressed by the City." [DE 13 at 3, Case 2].  Specifically, the Court held that, "[a]s it is unclear which allegations - if any - are redressable under USERRA, Baluja fails to establish standing." [*Id.*].

Despite the District Court making clear that, in order to establish standing and survive dismissal, Baluja needed to identify the specific redressable damages he claims to have suffered, Baluja instead elected to include what can only be described as a settlement demand in his Third Amended Complaint. [DE 17 at ¶ 65, Case 2]. Importantly, because he alleges that he is currently employed by the City in his Third Amended Compliant (which he confirms throughout his Initial Brief ("IB")), the description of damages Baluja argued supports his USERRA claim, once again, failed to inform the District Court what, if anything, he believed was redressable by that Court:

| Item | Description | Value |
|---|---|---|
| 1 | Base salary remaining years of service—five (5) years until 25 years of service retirement with 300 hours of pensionable overtime | $716,676 |
| 2 | Salary for additional eight (8) years of drop with no overtime ($125, 917.00 x 8) and assuming no additional pay increases after FY28 | $1,007,336 |
| 3 | Eight (8) years of drop at average 4% compound interest (interest normally between 3% and 7%) | $1,030,160 |
| 4 | Chapter 185 fund, average for 33 years of service (average) | $150,000 |
| 5 | Post Employment Health Plan, average for 33 years of service (average) | $150,000 |
| 6 | Compensatory Amount Subtotal | $3,054,172 |
| | | |
| 7 | Estimated Attorney Fees and costs (if goes to trial) | $400,000 |
| 9 | | |

[*Id.*, Case 2]. In other words, despite the District Court directing Baluja to identify the specific concrete harms he believed were redressable by that court in his Third Complaint, Baluja ignored the directive and instead included a factually unsupported demand for $3,054,172, which was comprised of things such as his "base salary" for all of his "remaining years of service," his base salary for eight (8) years after the end of his employment, eight (8) years of pension payments beyond the end of his

16

employment, "Chapter 185 fund" payments, and "Post Employment Health Plan." [*Id.*, Case 2]. The fact that Baluja continues to describe these items as "money the city still owes him" in his Initial Brief, is entirely belied by the fact that Baluja remains employed by the City and has not otherwise alleged any factual basis to support his request for any portion of such amounts. [IB at 22-23].

### B.   Baluja's Selective Reliance On Prior Complaints Should Be Disregarded.

It is well-established that, "[a]n amended pleading supersedes the former pleading; 'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (citing *Proctor & Gamble Defense Corp. v. Bean*, 146 F.2d 598, 601 n. 7 (5th Cir. 1945)). Therefore, once a compliant is amended the prior complaints become "a legal nullity." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

However, while "the weight of federal authority suggests that previous complaints filed in the same action" are generally not "considered by the court on a motion to dismiss the amended complaint[,]" courts "will consider prior pleadings . . . when the plaintiff directly contradicts the facts set forth in his original complaint." *Fernandez v. School Board of Miami-Dade County*, 201 F. Supp. 3d 1353, 1357–62

(S.D. Fla. 2016) (holding that prior pleadings should be considered where the amended pleading is a "transparent attempt . . . to avoid a dispositive defense raised by the defendant and the amended complaint directly contradicted the original complaint") (internal citations omitted).

Here, Baluja attempts to use the allegations from prior complaints as a sword and a shield. As such, the Court should: (a) carefully consider Baluja's repeated failure to explain why he removed certain (verified) facts from his Third Complaint that were detrimental to his USERRA claim; and (b) simultaneously reject Baluja's attempt to rely on select allegations in his Initial Brief that were only alleged in his First and Second Complaints, but omitted from his Third Complaint.

For sake of clarity, the allegations Baluja included in the "Factual Background" of his Initial Brief are taken solely from Baluja's Second Complaint, as opposed to his Third Complaint (which is the operative complaint). [*See*, IB at 15-20 (citing exclusively to DE 1, i.e., Baluja's Second Complaint)]. Importantly, however, Baluja excludes from the allegations in his "Factual Background" the facts he alleged in his Second Complaint that conflicted with his USERRA claim. [*Id.*].

This partial set of allegations, which Baluja relies on in an attempt to reinterpret and bolster his USERRA claim before this Court, should instead serve to demonstrate the very issue the District Court faced when it asked Baluja to reconcile the many different, and often contradictory, allegations in his complaints.

By way of example, in the "Factual Background" section of his Initial Brief, Baluja cites to certain factual allegations that were only included in his First and Second Complaints, relating to the City having performed a "wellness check" on Baluja. [IB at 18]. Not only did Baluja omit these allegations from his Third Complaint, even a cursory comparison between how these allegations are alleged in his First and Second Complaints, as compared with how Baluja describes them in his Initial Brief, makes clear that he is improperly attempting to amend his allegations (or at least reframe them) through briefing, in an attempt to make it appear as though Baluja properly alleged having been discriminated against on the basis of his military status in a non-conclusory manner, which he did not:

| Second Complaint [DE 1 at ¶85, Case 2] | IB at 18 (emphasis added) |
|---|---|
| Less than two weeks later, on January 15, 2023, Baluja took a day of family sick leave to care for his ill fiancé at their high-rise apartment in Broward County. Despite the building security of a full-time concierge and security system and required key-fob to access all entrances to the building, elevators, and floor access, Baluja and his fiancée were startled by an obtrusive banging on their door by a CGPD Sergeant Bo Williams ("Sgt. Williams"), in uniform, to question Baluja as to his whereabouts. Sgt. Williams claimed he was doing a "wellness check" on Baluja. **The "wellness check" on Baluja was committed as a result of** | **CGPD officials' displeasure with Baluja's use of military leave bled over into his use of personal leave, as well.** When Baluja took a day of family medical leave in early 2023, for instance, the CGPD sent an officer to his apartment outside of Coral Gables to gain access to his apartment building, bang on his door, and perform a "wellness check." A20 (Doc. 1 at 16). When Baluja used another day of leave weeks later, he was subjected to additional harassment and a wellness check. A20- A21 (Doc. 1 at 16-17). |

No. 25-13258
*Michael Baluja v. City of Coral Gables*

| **Baluja's military status, a violation the FUSPA and the USERRA.** | |
|---|---|

Likewise, Baluja attempts to support his USERRA claim in his Initial Brief by relying on allegations that "Chief Hudak personally contacted Baluja's Group Commander—in violation of Army protocol—to request Baluja's service record, training records, and information about his deployments[,]" which Baluja alleged in his Second Complaint led to the "Army issu[ing] Baluja a written reprimand following this improper contact." [IB at 18]. Even putting aside the fact that Baluja fails to explain *how* making a request for military records is a "malicious and discriminatory practice,"[1] as he argues, the allegation itself is only contained in Baluja's First [DE 1-1 at ¶¶103-105, Case 1] and Second Complaints [DE 1 at ¶96, Case 2], and completely absent from Baluja's Third Complaint.

Similarly, this Court should also reject Baluja's attempts in his Initial Brief to reinterpret (or add color) to the allegations in his Third Complaint. For example, Baluja argues in his Initial Brief, without record citation, that the City "violated USERRA . . . **all because [Baluja] refused to stop serving in the U.S. Army National Guard**." [IB at 10] (emphasis added). Not only does this allegation not

---

[1] Mere comments and frustration expressed regarding military leave does not automatically "permit an inference of discriminatory motivation." *KENNY GORIS, Plaintiff, v. DELOITTE, Defendant.*, No. 25 CIV. 1532 (JPC), 2026 WL 621575, at *7 (S.D.N.Y. Mar. 5, 2026).

appear in any of Baluja's three complaints, a search of the word "refuse" does not yield any results in any of those complaints.

Finally, and equally as important as Baluja's selective reliance on what he perceives to be "helpful" allegations from his prior complaints, this Court should reject Baluja's disregard and failure to reconcile the many contradictory allegations he raised in his first two complaints, but omitted from his Third Complaint (and in his Initial Brief).  For example, with respect to his alleged removal from the Marine Patrol Unit and resulting "loss in special unit pay," Baluja admitted having been paid that money back in his First and Second Complaints [DE 1-1 at ¶68, Case 1; DE 1 at ¶61, Case 2], but omitted the same from his Third Compliant, in an obvious attempt to survive a motion to dismiss.  Likewise, in his First and Second Complaints, Baluja alleged that, in 2022 "**[e]ach veteran employed by the City** of Coral Gables received [a] letter from Defendant Peter Iglesias . . . [and] . . . **[t]he veterans/officers read their letters during roll call**." [DE 1-1 at ¶76, Case 1; DE 1 at ¶69, Case 2] (emphasis added).  While Baluja alleged (in his First and Second Complaints) not having received a letter in 2022, he irreconcilably alleged this was "as a result of [his] military status," ignoring his own allegation that the other police officers also had military backgrounds but *did* receive letters. [*Id*.].  Baluja not only omitted these facts from his Third Complaint, he also omitted them from his Initial Brief, despite exclusively relying on allegations from his Second Complaint therein.

Despite the District Court having expressly found that Baluja "omit[ted] references to the City's corrections in a transparent attempt to avoid dismissal on the same grounds" [ECF No 25 at 2, Case 2], Baluja continues to forego any attempt to reconcile the many contradictory allegations from his pleadings in his Initial Brief, and once again attempts to reinterpret his allegations by claiming that the City "has compensated Baluja for only a portion of these financial injuries[,]"again without any record citation. [IB at 18]. This, despite the District Court having cautioned Baluja that the lack of clarity in his allegations would be (and ultimately was) fatal to his claim. (*See*, pgs. 11, 15, *supra*) ("it is unclear which allegations - if any - are redressable under USERRA").

Ultimately, a plaintiff is a master of their complaint. The Third Complaint is the operative complaint and, on appeal, Baluja favoring choice allegations from different complaints, recharacterizing certain allegations to support his position that the District Court erroneously ruled, and avoiding allegations he omitted from his Third Complaint that were detrimental to his ability to establish standing under USERRA, should not be rewarded.

## **STANDARD OF REVIEW**

This Court reviews *de novo* an order dismissing a case for failure to state a claim, accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Edwards v. Prime, Inc.*, 602 F. 3d 1276,

1291 (11th Cir. 2010).  But that maxim does not apply "to labels and legal conclusions." *Id.*  "Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts" do not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F. 3d 1183 (11th Cir. 2003).

## SUMMARY OF THE ARGUMENT

Despite having three opportunities to establish standing and state a claim for discrimination under USERRA before the District Court, Baluja simply failed to plead any non-conclusory allegations which, when accepted as true for purposes of a motion to dismiss, would establish that the City discriminated against him because of his membership in the armed services, as required.  To the contrary, the factual allegations from Baluja's First and Second Complaints (which Baluja omitted from his Third Complaint), when accepted as true for purposes of a motion to dismiss, establish the absence of any discrimination, particularly where Baluja alleges that other members of his same protected class were treated better than he was. Ultimately, despite being given a roadmap by the District Court as to which well-pleaded *factual* allegations he needed to clarify in his Third Complaint in order to survive dismissal, Baluja elected to omit factual allegations that contradicted his USERRA claim, without an attempt to reconcile them with the allegations in his Third Complaint, in an attempt to avoid dismissal.  The District Court correctly decided that was improper, and this Court should as well.

This Court should affirm the District Court's order granting the City's Motion to Dismiss the Third Amended Complaint for a number of different reasons:

*First*, Baluja failed to establish standing to bring suit under USERRA, and failed to state a claim for discrimination under that statute.

*Second*, there are limits to the requirement that the District Court accept the allegations contained in a complaint as true and construe them favorably to the party opposing a motion to dismiss. Here, the District Court correctly concluded that Baluja failed to "remedy the pleading deficiencies the Court identified in its Order dismissing Plaintiff's [Second] Complaint." Nevertheless, the District Court considered the well-pleaded allegations in the Third Amended Complaint, but Baluja's intentional omission of certain allegations that clearly contradict his claims, without explanation, prevented the District Court from construing those allegations in a manner that would have led to the denial of the City's Motion to Dismiss Baluja's Third Complaint.

*Third*, Baluja waived the arguments he raises on appeal regarding the applicability of *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024), because he failed to sufficiently develop such arguments with the District Court to preserve them for appeal.

*Forth*, dismissal with prejudice was appropriate where Baluja was afforded multiple opportunities to plead a case against City and still failed to do so.

24

## ARGUMENT

### I.    THE DISTRICT COURT PROPERLY DISMISSED BALUJA'S USERRA CLAIM.

"USERRA provides that a member of the Armed Services 'shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership.'" *Dees v. Hyundai Motor Mfg. Alabama, LLC*, 368 Fed. App'x at 50 (citing 38 U.S.C. § 4311(a)); *see also*, *Ward v. United Parcel Serv.*, 580 F. App'x 735, 738 (11th Cir. 2014) (same).

To state a *prima facie* claim of discrimination under USERRA, a plaintiff must allege sufficient facts to establish that he suffered an adverse employment action, and that his military membership or service was a motivating factor in the actions taken against him. *See Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005).[2] USERRA also prohibits employers from taking adverse actions against individuals who have: (1) taken action to enforce USERRA's protections; (2) testified in a USERRA proceeding; (3) participated in a USERRA investigation; or (4) exercised a right that USERRA provides. *Brown v. Houser*, 129 F.Supp.3d 1357 (N.D. Ga. 2015) (citing 38 U.S.C. § 4311(b)).

---

[2] "This case has been superseded by statute on unrelated issues regarding when an employer qualifies as a successor in the interest of a prior employer." *Herrera v. City of Hialeah, Fla.*, No. 21-14271, 2023 WL 238999, at *2 (11th Cir. Jan. 18, 2023).

No. 25-13258
*Michael Baluja v. City of Coral Gables*

The categories of damages available under USERRA are very limited: (i) lost wages or benefits; (ii) liquidated damages equal to the wages or benefits lost if the violation was willful; (iii) equitable remedies; and (iv) attorney fees. 38 U.S.C. § 4323(d)(1)(B)-(C), (e), (h).  USERRA defines "benefit," "benefit of employment," and "rights and benefits" as the "terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) . . . and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment." 38 U.S.C. § 4303(2); *see also* 20 C.F.R. 1002.312.

Importantly, USERRA does not allow for the recovery of emotional pain and suffering damages. *See*, *e.g.*, *Dees v. Hyundai Motor Mfg. Alabama, LLC*, 605 F.Supp.2d 1220 (M.D. Ala. 2009), *aff'd*, *Dees*, 368 Fed. App'x. at 52–53 (11th Cir. 2010) (finding that USERRA's "remedial scheme conspicuously omits any recovery for mental anguish, pain and suffering, and punitive damages"); *Carter v. United Parcel Serv., Inc.*, No. 3:13-CV-2802-B, 2014 WL 1386351, at *2 (N.D. Tex. Apr. 8, 2014) ("the Court is unaware of any authority that *does* find punitive or mental anguish damages part of the remedies afforded under USERRA") (emphasis in original).  Thus, only "lost wages or benefits" resulting from an adverse employment

26

action are redressable under USERRA. *Posin v. Cnty. of Orange*, No. SACV150120AGJCGX, 2016 WL 5858706, at *3 (C.D. Cal. Jan. 18, 2016).

### A.     <u>**Baluja Failed To Establish Standing To Bring A Claim Under USERRA.**</u>

Standing is the "threshold question in every federal case[.]" *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  To satisfy Article III's standing requirements, Baluja bears the burden of establishing, at a minimum: (1) that he "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . (b) actual or imminent, not conjectural or hypothetical"; (2) that the injury is "fairly trace[able] to the challenged action of the defendant"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "Not all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001) (abrogated on other grounds by *Brathwaite v. Sch. Bd. of Broward Cnty., Fla.*, 763 Fed. Appx. 856 (11th Cir. 2019).  This remains true even post-*Muldrow*, "because *Muldrow* still requires the alleged harm affect an identifiable term or condition of employment[.]" *Epperson v. Hertz Corp.*, No. 2:24-CV-383-SPC-DNF, 2025 WL 2855368, at *3 (M.D. Fla. Oct. 8, 2025) (explaining that "disciplinary warnings," "enhanced oversight," and the "potential of future

termination" . . . "are not adverse employment actions when they have no tangible effect on employment"); *see also*, *Lukie v. MetLife Grp., Inc.*, No. 22-10967, 2024 WL 4471109, at *5 (11th Cir. Oct. 11, 2024) (concluding that the district court properly granted summary judgment for the employer on the plaintiff's discriminatory assignment of tasks claim because the assignment of administrative tasks "did not change in any disadvantageous way the terms and conditions of [plaintiff's] employment"); *Walker v. Baptist Health Sys., Inc.*, No. 3:25-CV-588-MMH-SJH, 2025 WL 3902262, at *7 (M.D. Fla. Dec. 15, 2025), *report and recommendation adopted*, No. 3:25-CV-588-MMH-SJH, 2026 WL 49811 (M.D. Fla. Jan. 7, 2026) (noting plaintiff failed to allege "harm or disadvantageous change to any term or condition of her employment occasioned by the alleged reprimands, write-ups, or harsh meeting").

In his Initial Brief, Baluja cites to *Dees*, without analysis, in support of his position that Baluja's "injuries are plainly redressable in this suit." [IB at 30]. Yet, the holding in *Dees* stands counter to the position for which Baluja cites to it. In *Dees*, the employee, who was an active member of the National Guard, alleged that he had been harassed due to his military service, which created an abusive workplace. 605 F.Supp.2d at 1223. Dees brought a claim for harassment under USERRA and, while that court agreed that such a claim exists, it nevertheless held that Dees lacked standing to pursue that claim under USERRA "[b]ecause Dees

suffered no loss of wages or other benefits as a result of the alleged harassment against him, [and] he would not be entitled to loss of wages or other benefits or any commensurate liquidated damages were he to prevail on his harassment claim" *Id.* at 1227-1229.

Likewise, in *Richards v. Canyon Cnty.*, the plaintiff employee claimed that the employer violated USERRA by effectively requiring him to "use vacation days for his regularly scheduled [National Guard] duty[,]" thereby losing "the 'benefit' of being able to use his vacation days as he saw fit[.]" No. CV 12-00424-S-REB, 2014 WL 1270665, at *2 (D. Idaho Mar. 26, 2014). When the employee "left his employment with the County, he was paid for all his accrued vacation leave" and, therefore, the employer argued that the plaintiff lacked standing because he had already been compensated. *Id.* The court agreed and dismissed the case for lack of standing because "[t]he injury [plaintiff] alleges can only be described as one which is emotional distress, or pain and suffering, and USERRA does not permit recovery for such damages." *Id.* at *5. The court further held plaintiff could not "recover liquidated damages, even upon a showing of willfulness, because there is nothing to 'match' such liquidated damages upon." *Id.*

In describing the only damages available under USERRA, the *Richards* court noted that "Congress allows the affected service member to collect what are, in essence, most similar to contract damages—i.e., the benefit of his or her employment

bargain that would have existed but for his military service." *Id.* at *3. Since the plaintiff in that case had been "compensated for all his vacation leave" (i.e., the benefit of his employment bargain), he could not show a "substantial likelihood" of having a redressable claim and, therefore, the court lacked standing. *Id.* at *5.

Like the plaintiffs in *Dees* and *Richards*, Baluja's complaints focused solely on the monetary value of the lost wages and benefits he claims to have suffered. However, in his First and Second Complaints, he alleged those were paid back and, in his Third Complaint, he failed to specifically inform the District Court how a judicial decision could redress any other sort of harm he claims to have suffered. A such, his Third Complaint was properly dismissed for lack of standing.

In his Initial Brief, Baluja argues that the facts in *Richards* are "quite different" from the facts he alleges in his Third Complaint. [IB at 36]. In support of his position, Baluja argues that he "alleged that he was **transferred** from two different positions in CGPD because of his military status, **denied backpay**, and **subjected to employer requirements that violate USERRA**[,]" without citation to allegations from his Third Complaint supporting those arguments. [*Id.*].

Putting aside the fact that the argument that Baluja was "subjected to employer requirements that violated USERRA" is a conclusory statement lacking any specificity, Baluja's claim on appeal that he was "transferred" is merely another attempt by Baluja to introduce allegations on appeal for the first time, which he has

likewise waived.  In fact, in presenting his "Statement of Issues" on appeal, Baluja

asks:

> 2.    Whether the district court properly held that Plaintiff failed to allege that Defendant violated USERRA by transferring him to a different division, removing him from the SWAT team, and paying him less as an explicit consequence of his military service, as well as engaging in employment practices that the statute forbids.

[IB at 9] (emphasis added).

Undoubtedly, the repeated use of the "transfer" in Baluja's Initial Brief is intended to closely align the allegations in his Third Complaint with those in *Muldrow* which, as discussed below, should be independently rejected because Baluja waived those arguments by failing to sufficiently develop them before the District Court. (*See*, pgs. 51-54, *infra*).  Yet, while the word "transfer" appears (in some form) **29 time in Baluja's Initial Brief** (including in his "Statement of Issues"), **it appears 0 times in Baluja's Third Complaint** and **0 times in his Response** to the City's Motion to Dismiss his Third Complaint. Likewise, the word "division" appears 0 times in Baluja's Third Complaint (except for the reference to the District Court's "Miami Division"), and Baluja's argument that he was "prevented . . . from advancing to positions with higher pay" [IB at 18-19] likewise does not appear in his Third Complaint.  In fact, while Baluja argues in his Initial

31

Brief that "[t]he CGPD **transferred** Baluja from the Marine Patrol Unit to the Uniform Patrol Division[,]" that is not alleged anywhere in his Third Complaint. [IB at 43]. Baluja abandoned these arguments by failing to raise them without supporting arguments and authority before the District Court. (*See*, pgs. 51-54, *infra*) (discussing waiver of arguments).

As with Baluja's other attempts to amend the allegations in his Third Complaint through argument, his attempts to make it seem as though he properly alleged having been transferred to a different division, which only appears in his briefing on appeal, should also be rejected. (*See also*, pgs. 20-21, *supra*) (explaining that a search of Baluja's complaints for the word "refuse" likewise did not yield any results).

Likewise, with respect to Baluja's claim that he was denied backpay, the allegations in his Third Complaint do not match his arguments on appeal:

1. Baluja failed to allege that he suffered any "loss of special unit pay" in connection with his alleged removal from the Marine Patrol Unit.

In his Third Complaint, Baluja alleged that his removal from the Marine Patrol Unit "resulted in his loss of special unit pay." [DE 14 at ¶24, Case 2]. This stands in contrast to the allegations in Baluja's First and Second Complaints, wherein he admitted that, in 2021 (years prior to Baluja filing his First Complaint), the City made "corrections to pay, return of leave, and back pay from [Baluja's] removal date

32

of January 7, 2019." [*See*, *e.g.*, DE 1-1 at ¶68, Case 1; DE 1 at ¶61, Case 2]. In its order granting the City's Motion to Dismiss Baluja's Second Complaint, the District Court correctly held that Baluja's removal from the Marine Patrol Unit was not redressable because Baluja himself admitted having "received corrections from the City for lost wages and benefits." [DE 13 at 3, Case 2]. Despite the District Court explaining that the allegation (at the very least) made it unclear what (if anything) Baluja believed was redressable by the District Court, Baluja nevertheless omitted the reference to him having been paid back any lost wages and benefits from the City from this Third Complaint in an attempt to survive a motion to dismiss, and attempts to downplay the allegation in his Initial Brief:

| Second Complaint [DE 1 at ¶¶25, 27, 61, Case 2] (emphasis added) | Third Complaint [DE 14 at ¶¶25, 27, Case 2] |
|---|---|
| "Defendant subsequently replaced Baluja's position on the Marine Patrol Unit where he had served for over 12 years, despite the position having a vacancy which had not been filled in three years." | "Defendant subsequently removed Baluja from his position on the Marine Patrol Unit where he had served for over 12 years, despite the position having a vacancy which had not been filled in three years." |
| "Baluja's removal from the marine patrol unit resulted in his loss of special unit pay." | "Baluja's removal from the marine patrol unit resulted in his loss of special unit pay and correlating pension benefits." |
| "Defendant City responded to the demand letter with a letter from Green with the corrections to pay, return of leave, and the back pay to that date. **Defendant City included Baluja's marine patrol pay and back pay** from Baluja's removal date of January 7, | *Omitted* |

33

| | |
|---|---|
| 2019. Defendant did not include any interest for the time that Baluja had to wait to get paid." | |

What is more, in his Initial Brief, Baluja avers that "[i]n late 2021, the CGPD provided Baluja backpay, pay corrections, and return of improperly allocated leave for the period from January 7, 2019—the date of his removal from the Marine Patrol Unit . . . [and] . . . **[t]he department has continued to pay Baluja Marine Patrol Unit and SWAT team wages since that date."** [IB at 16, 18-19] (emphasis added). Despite this, Baluja attempts to argue that he is somehow owed "backpay" and astonishingly argues that such backpay (and front pay) is in the millions of dollars. (*See*, pg. 16-17, *supra*).

However, even if the Court were to assume that Baluja's alleged removal from the Marine Patrol Unit were a "benefit of employment," Baluja failed to allege non-conclusory allegations of discriminatory motive sufficient to support a claim under USERRA, as the City discusses below. (*See*, pgs. 38-48, *infra*).

> 2.   Baluja failed to allege that he suffered any loss of pay for allegedly being placed on the SWAT Team's Inactive Status.

As with his Marine Patrol Unit pay, Baluja avers in his Initial Brief that the City has "continued to pay Baluja Marine Patrol Unit and **SWAT team wages**[.]" [IB at 19] (emphasis added).  With respect to being placed on the SWAT Team's Inactive Status itself, Baluja only briefly mentions the allegation in his Initial Brief,

34

and then only to argue that the move was an "unusual step" by the City's Police Department, which does not synonymous with it being discriminatory, as he argues. [IB at 17].  As reiterated below, Baluja has (at all times) failed to allege any non-conclusory allegations that his alleged placement on inactive status from SWAT has anything to do with his military service. (*See*, pgs. 45-46, *infra*).

> 3.     Baluja failed to allege that he suffered any loss of pay for allegedly being placed on the SWAT Team's Inactive Status.

In his Initial Brief, Baluja also argues that "[e]ven the City's revocation of Baluja's 'privilege' to work out while on duty represents a sufficient change in the conditions of employment to sustain a cause of action under USERRA." [IB at 39].

Once again, in his Third Complaint, Baluja did not even include the allegation that he lost the privilege to work out.  Instead, in his First and Second Complaints (only) Baluja alluded to having "filed a grievance with CGPD regarding the suspension of his workout privileges as a member of the SWAT Team." [DE 1-1 at ¶91, Case 1; DE 1 at ¶84, Case 2].  However, Baluja himself alleges that his loss of "workout privileges," regardless of reason, is a contractual issue governed by, and subject to, the "grievance" procedure under the collective bargaining agreement applicable to his employment. [*Id*.].  In fact, Baluja alleged having already sought to redress the loss of his "workout privileges" by invoking the grievance procedures in the collective bargaining agreement, alleging that he "filed a grievance with CGPD"

to redress that claim. [*Id*.].　By invoking the very grievance procedures that "terminates in final binding arbitration under applicable law[,]" *City of Miami v. Fraternal Ord. of Police Lodge No. 20 of City of Miami*, 378 So. 2d 20, 24 (Fla. 3d DCA 1979), Baluja was required to "attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965).　At the very least, Baluja should have clarified how him having filed arbitration regarding this issue was not dispositive or detrimental to this portion of claim, but elected to ignore it instead.

> ## 4. Baluja's claimed entitlement to liquidated damages is insufficient to support standing.

In his Initial Brief, Baluja argues that he has "not received compensation for . . . liquidated damages for willful USERRA violations[.]" [IB at 19].　Yet, Baluja fails to cite to any case law for the proposition that he can establish standing based solely on liquidated damages being available for USERRA plaintiffs that establish willful violations.　Of course, such a result would be inconsistent with the fact that liquidated damages is a *remedy* available to *prevailing* plaintiffs who otherwise prove a statutory violation (and, under USERRA, willfulness). *See e.g.*, *Annarumma v. City of High Springs Fla.*, 846 F. App'x 776, 785 (11th Cir. 2021) ("'Willfulness' factors into a court's analysis **when determining damages** for a USERRA violation. USERRA provides that a prevailing party may be entitled to a liquidated damages

36

award for backpay upon a determination that 'the employer's failure to comply with the provisions of [USERRA] was willful.' 38 U.S.C. § 4323(d)(1)(C). Because the district court correctly found that [plaintiff's] USERRA discrimination claim failed, **a willfulness determination is irrelevant in this case**.") (emphasis added). Because Baluja fails to independently establish standing, he cannot rely on a measure of damages such as liquidated damages to establish standing.

5.   <u>Baluja's claimed entitlement to injunctive relief is insufficient to support standing.</u>

In his Initial Brief, Baluja argues that "[e]ven if the City returned this leave in response to Baluja's demand letter . . . he may still be awarded injunctive relief to prevent further statutory violations[.]" [IB at 49-50] (citing 42 U.S.C. § 4323(d)(1)(A), (e)(1)).  As is this Court has held, "[b]ecause injunctions regulate future conduct, **a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury.** *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (emphasis added).

Here, at best, Baluja failed to properly allege what, if any, actual or imminent injuries existed that would have entitled Baluja to injunctive relief.  Baluja likewise fails to explain how the District Court could have enjoined past harms, particularly those Baluja has declared (and continues to declare) have been remedied.

In short, because Baluja failed to properly allege (and explain) to the District Court what specific relief it could have provided Baluja, the District Court correctly dismissed Baluja's Third Complaint for lack of standing.

### B.     <u>Baluja Failed To State A Claim Under USERRA.</u>

Even if Baluja could have established standing by alleging that he suffered a redressable adverse employment action, which he did not, his USERRA claim nevertheless fails because he did not allege facts sufficient to establish that any such adverse employment action was motivated by his membership or service in the uniformed services; and (b) similarly-situated employees who were not military members were treated more favorably than he was.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows district courts to dismiss a claim if the plaintiff's allegations do not state a claim upon which relief can be granted.  The allegations in the complaint "must contain enough factual matter to establish 'plausible,' as opposed to merely 'possible' or 'speculative,' entitlement to relief." *Enola Contracting Servs., Inc. v. URS Group, Inc.*, No. 5:08cv2-RS-EMT, 2008 WL 506324, at *1 (N.D. Fla. Feb. 21, 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering motions to dismiss, first, the district court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  Second, "[w]hen there

are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

In construing Rule 8, the Supreme Court in *Twombly* emphasized that rigorous enforcement of the Federal Rules' pleading requirements should be used by district courts to prevent speculative lawsuits. The Supreme Court instructed district courts to take action at the pleading stage to weed out complaints lacking the factual detail needed to support the plausible claims required by Rule 8. *Twombly*, 550 U.S. at 559.

Here, the allegations in Baluja's Third Complaint do not meet the Supreme Court's "plausibility" standard, and do not go beyond raising speculative claims, the likes of which the Supreme Court has stated should be weeded out at the pleading stage.

### a.    Baluja fails to allege an adverse employment action taken because of his military status.

To "'[d]iscriminate against' means treat worse," and "refers to distinctions or differences in treatment that injure protected individuals[.]" *Stanley v. City of Sanford*, Fla., 606 U.S. 46 (2025). As the Eleventh Circuit has made clear, claims of "[d]iscrimination [are] about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Silvera v. Orange County School Bd.*, 244 F. 3d 1253, 1262 (11th Cir. 2001).  Contrary to the conclusory manner in which Baluja

repeatedly pleaded his claim of discrimination under USERRA, military service, on its own, does not entitle him to relief under USERRA. *Norris v. Glassdoor, Inc.*, No. 2:17-cv-00791, 2018 BL 249874, 2018 LRRM 249874, 2018 WL 3417111 (S.D. Ohio July 13, 2018). Nor does USERRA make actionable *all* employment actions against military members, as Baluja suggests. *Kieffer v. Fitness of Adrian, LLC*, 2017 WL 3581315, at \*4-5 (E.D. Mich. Aug 18, 2017) (dismissing USERRA discrimination claim under Rule 12(b)(6) where plaintiff failed to allege that his uniformed service was a motivating factor in his firing). Instead, 38 U.S.C. § 4311 requires that Baluja's military status be "the actual substantial or motivating factor for an adverse employment action." *Id.*

Courts addressing this very issue have held that if, as Baluja suggests, "all veterans who experience adverse employment actions for nondiscriminatory reasons could recover legal damages from their employers, USERRA might make veterans unemployable." *Norris*, No. 2:17-CV-00791, 2018 WL 3417111, at \*5 ("Such far-reaching relief was not Congress's intent in passing USERRA, and no court has held that it was.").

At the pleading stage the threshold requirement of Rule 8(a)(2) requires that the "'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557. A mere "blanket assertion[] of entitlement to relief" will not do. *Id. at* 556 n.3.

Ultimately, while well-pleaded *factual* allegations contained in Baluja's Third Complaint are assumed to be true for purposes of determining whether he sufficiently stated a claim, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 679.

Here, even ignoring the fact that Baluja attempts to rely on allegations from different complaints on appeal, the factual allegations upon which he attempts to rely in support of his USERRA claim are simply not well-pleaded. Baluja's Third Complaint is replete with legal conclusions, as he effectively included every employment action taken with respect to his employment over the last several years (whether allegedly adverse or not), and attempted to adorn such employment actions by adding the conclusory allegation that such actions were all taken "as a result of" his military service, without any factual support. [*See*, *e.g.*, DE 14 at ¶¶32, 47, 48, Case 2]. It is well-established that such conclusory allegations need not be accepted as true for purposes of a motion to dismiss and, as result, Baluja failed to state a claim.

1. <u>Baluja failed to allege the existence of any comparators treated more favorably than he was.</u>

In his Third Complaint, Baluja fails to allege the existence of any similarly-situated employees outside of his protected category that were treated more favorably than he was. *See*, *e.g.*, *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d

955, 974 (11th Cir. 2008) (rejecting plaintiffs' allegation that they were denied promotions and treated differently than similarly situated employees as failing to "amount to a short and plain statement of their claim under Rule 8(a)"), *abrogated on other grounds by Iqbal*, 556 U.S. 662.   In fact, Baluja not only failed to plead that his military service was a motivating factor for any alleged adverse employment action taken with respect to his employment, he admitted in his First and Second Complaints that no such animus exists by comparing his experience with that of other City police officers who are also members of the military.   As stated above, Baluja alleged that he was treated less favorably than other police officers in his same protected category (police officers with military backgrounds). (*See* pgs. 20-21, *supra*).   Not only is that allegation entirely inconsistent with his claim that the City intentionally discriminated against him because of his membership in the military, it likewise establishes that the reason such action was taken was for a reason other than Baluja's military status.

Importantly, like the other allegations that undermined Baluja's USERRA claim, Baluja removed the foregoing allegations from his Third Complaint without explanation and without attempting to reconcile the contradictory allegations before the District Court.   Baluja likewise fails to address the inconsistency in his Initial Brief before this Court.

With respect to Marine Patrol, even ignoring that Baluja failed to reconcile the allegations from his First and Second Complaints wherein he claimed that he had been paid back all of his Marine Patrol Pay, he also alleged no facts to establish that he was treated less favorably than other employees in connection with his alleged removal from the Marine Patrol Unit, or that such action was taken because of his membership in the military.

In his Third Complaint, Baluja alleges that, in 2018, Chief Hudak indicated that "if Baluja continued on leave on military duty, Chief Hudak intended to replace his position on the Marine Patrol Unit," and the City "subsequently removed" Baluja from the Marine Patrol Unit. [DE 14 at ¶¶21, 22, Case 2].  Importantly, Baluja fails to provide any details regarding *when* he was removed from the Marine Patrol Unit, and whether other employees on leaves of absences were treated more favorably than Baluja in that regard.  These material omissions are fatal to Baluja's USERRA claim because, outside of the context of employees retaining the same seniority (which Baluja has never argued), USERRA only provides that "a person who is absent from the workplace while in uniformed service shall be entitled 'to such other rights and benefits not determined by seniority **as are generally provided by the employer . . . to employees having similar seniority, status, and pay who are on furlough or leave of absence**[.]" *Fannin v. United Space All.*, LLC, 392 F. App'x 788, 789 (11th Cir. 2010) (citing 38 U.S.C. § 4316(b)(1)(B) (emphasis added)).

Conversely, in the context of seniority, which is inapplicable to Baluja's claims, USERRA provides that "[a] person who is reemployed under this chapter is entitled to the seniority and other rights and benefits **determined by seniority** that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed." (*Id.*) (citing 38 U.S.C. § 4316(a) (emphasis added)).

As such, even when accepted as true (and even when one ignores Baluja's failure to allege any facts that would allow a court to determine the temporal proximity between Chief Hudak's alleged statements and Baluja's alleged removal from the Marine Patrol Unit), the removal from the Unit cannot serve to support Baluja's claim because he fails to allege the existence of a comparator that was treated more favorably than he was.

> 2.  Baluja failed to allege that he was placed on Inactive Status from the SWAT Team because of his military status.[3]

Even if he had properly pled the existence of such comparators, Baluja nevertheless fails to allege any facts from which discriminatory animus may be inferred because nothing in his Third Complaint supports that the City took any

---

[3] Like his alleged removal from the Marine Patrol Unit, Baluja's alleged removal from the SWAT team (and other similar actions), suffer from the same failure to allege comparators that were treated more favorably than Baluja.

action with respect to Baluja's employment because of his membership in the military.

With respect to being removed from the SWAT Team in his Third Complaint, Baluja did not allege how that action was taken because of his membership in the military, or how it resulted in him being "treated worse" than other employees. [*Id.* at ¶42, Case 2].  Instead, Baluja merely alleged that "[o]n or about December 28, 2022, Baluja [sic] placed on Inactive status from the SWAT team." [*Id.*].  Even accepting this allegation as true for purposes of a motion to dismiss, it is completely silent as to *why* Baluja was placed on inactive duty and forces the reader to assume that he was placed on inactive status because of his membership in the military.

Even in his Initial Brief, Baluja describes being removed from the SWAT Team as "unusual," but alleges having asked for an explanation as to why he was removed from the unit, and not being told. [IB at 12].  Of course, the fact that something is "unusual" does not mean it is discriminatory and, Baluja's attempt to label the action as discriminatory simply because he is in the military should be rejected, particularly because he admits lacking knowledge as to why he was allegedly removed from SWAT Team and asking for an explanation as to the same. Ultimately, because it is equally possible that Baluja's military status played no role in the decision to place him on inactive status, his claim that the decision was taken

45

because of his military status is merely a threadbare conclusory statement that does not need to be accepted as true.

Thus, while Baluja omitted the allegation that he lost his "workout privileges as a member of the SWAT Team" as a result of his suspension from his Third Complaint [*compare with* DE 1 at ¶84, Case 2], and instead alleged having been "prevented from working SWAT overtime, SWAT off-duty details, and prevented [] from receiving pension benefits that he otherwise would have received" in his Third Complaint, he nevertheless failed to allege that his underlying removal from SWAT Team was because of his military status. [DE 14 at ¶43, Case 2].

> 3.   <u>Baluja failed to allege that he was placed on No Pay Status, and was locked out of the INFOR system, because of his military status.</u>

USERRA was enacted "(1) to encourage service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service; (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and (3) to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301.  The Act provides that "employees absent for military service are entitled to the most favorable treatment provided to non-military

employees on any comparable form of leave." *Myrick v. City of Hoover, Alabama*, 69 F.4th 1309, 1319 (11th Cir. 2023) (citing 20 C.F.R. § 1002.150(b)). This means that "the most favorable treatment accorded any particular leave would also be accorded the military leave, *regardless of whether the non-military leave is paid or unpaid.*" *Id*. (emphasis in original) (citing H.R. Rep. No. 103-65, pt. 1, at 33–34 (1993)).

In his Third Complaint, Baluja generally alleges that he was: (a) placed on a "no pay" status; and (2) was "locked out of the INFOR system," [DE 14 at ¶¶40-41, Case 2]. Yet, Baluja failed to allege any facts to support that such actions were taken because of his military status, and failed to allege *how* non-military employees received more favorable treatment than him in that regard. Said differently, because USERRA does not provide employees with an entitlement to paid leave (or an entitlement to view their paychecks using an employer's paycheck viewer system), Baluja's allegations in that regard cannot (without more) be considered "less favorable treatment" within the meaning of USERRA. USERRA only requires that employers ensure military employees are entitled to the *same* benefits that other non-military employees would be entitled to under the same circumstances, and Baluja failed to explain how his alleged placement on no pay status or being locked out of the INFOR system compared with other employees. Once again, Baluja provides no

basis for inferring that he was "treated worse" than employees outside of his protected category, and his USERRA claim therefore fails. *Stanley*, 606 U.S. at 61.

Because the well-pleaded factual allegations in Baluja's Third Complaint do not support that the City discriminated against him based on his military service, and because Baluja failed to reconcile the many inconsistent facts undermining his claim of intentional discrimination, this Court should affirm.

## II. BALUJA WAIVED THE ARGUMENT HE RAISES ON APPEAL WITH REGARD THE APPLICABILITY OF THE SUPREME COURT'S *MULDROW* DECISION TO HIS USERRA CLAIM.

It is well-established that "[i]ssues raised for the first time in this Court are generally not considered because the district court did not have the opportunity to consider them." *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1280 (11th Cir. 2001) (internal quotation marks omitted) (declining to consider new arguments on appeal); *see also Fannin*, 392 F. App'x 790 (in USERRA case, declining to consider the merits of arguments not raised before the district court); *Onishea v. Hopper*, 171 F.3d 1289, 1305 (11th Cir. 1999) (declining to consider "newly raised issue" on appeal).

In the analogous context of briefing issues on appeal, this Court has consistently held that "a party fails to adequately 'brief' a claim when he does not 'plainly and prominently' raise it, 'for instance by devoting a discrete section of his argument to those claims.'" *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678,

681 (11th Cir. 2014) (citing *Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 530 (11th Cir. 2013)); *see also*, *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (explaining that "an appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies," and that "simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal"); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("BOA must not be allowed to embellish an argument in a reply brief when it failed to fully raise and address the issue in its initial brief. Such a practice unfairly impedes the Trustee's response."). District courts apply this same principle to filings before them. *See*, *e.g.*, *Peyton v. Grant*, No. 24-CV-21649, 2026 WL 323038, at *7 (S.D. Fla. Feb. 6, 2026) ("Plaintiff's opposition abandons his theory as pled by failing to make supporting arguments and based on his concession that he was indeed paid 'something.'"); *Williams v. Mallet*, 707 F. Supp. 3d 1340, 1359 (S.D. Fla. 2023) ("in pushing this new tale, [plaintiff] has forfeited any argument he might have had for the (more viable) position that the Officers deployed excessive force against him before he was handcuffed.").

Here, Baluja argues that "[t]his appeal presents a question of first impression in this Circuit: whether the Supreme Court's decision in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024), applies to claims under the Uniformed Services

49

Employment and Re-employment Rights Act of 1994." [IB at i].  While Baluja describes the Supreme Court's decision in *Muldrow* as having been issued "recent[ly]," *Muldrow* was actually decided April 17, 2024, which was over seven months prior to the date on which Baluja filed his Response to the City's Motion to Dismiss his Second Complaint, and 14 months prior to the date on which Baluja filed his Response to the City's Motion to Dismiss his Third Complaint. (*See* pgs. 9, 13, *supra*).

Yet, Baluja did not raise this issue in his Response to the City's Second Motion to Dismiss and, in his Response to the City's Motion to Dismiss his Third Complaint, Baluja makes two references to *Muldrow*, without the sort of analysis he now includes in his Initial Brief regarding the applicability of *Muldrow* to his claims. [DE 23 at 7, 9, Case 2].  In that Response, Baluja did not analyze the facts in *Muldrow*, did not compare them to the allegations in his Third Complaint, and did not explain why the District Court should have applied *Muldrow* to claims brought under USERRA. [*Id.* at 7, 9, Case 2].  Baluja also had an additional opportunity to raise the very arguments he now raises regarding the applicability of *Muldrow* before the District Court, by moving for reconsideration of that court's order granting the City's Motion to Dismiss his Third Complaint, but failed to do so.

Because Baluja failed to sufficiently develop such arguments before the District Court, the Court should deem them waived. *See Singleton v. Wulff*, 428 U.S.

50

106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). As such, the District Court's ruling should be affirmed.

### III. EVEN IF BALUJA HAS NOT WAIVED HIS ARGUMENTS UNDER *MULDROW*, THE RESULT WOULD BE THE SAME.

In *Muldrow*, the Supreme Court clarified the appropriate standard for evaluating adverse employment actions in Title VII discrimination cases. 601 U.S. 346 (2024). In that case, a female police sergeant was <u>transferred</u> from a specialized intelligence division to a different job in the department, and a male officer took her place. *Id.* at 350-51. The plaintiff claimed that her <u>transfer</u> resulted from unlawful sex discrimination under Title VII. *Id.* at 351.

The district court granted summary judgment in favor of the city, stating that Muldrow had failed to a show that the <u>transfer</u> caused a "significant" change in her working conditions and established a "material employment disadvantage." *Id.* at 352. The Supreme Court reversed, holding that a Title VII plaintiff must show that a <u>transfer</u> brought "some harm" as to an identifiable term or condition of employment, but need not show significant harm from the <u>transfer</u>. *Id.* at 354–55. The Court stated that an employee need only show that there was a disadvantageous change to a term or condition of employment. *Id.* at 354. The Court determined that the employee met this standard because her responsibilities were reduced as a result

of her transfer, her new schedule was more irregular, and she lost access to her take-home car. *Id.* at 359.

Here, even if the Court were to find that Baluja did not waive his ability to argue the *Muldrow* decision's applicability for on appeal, the holding would nevertheless not affect the outcome because: (1) the holding in *Muldrow* was limited to claims of discrimination under Title VII; and (2) Baluja has failed to allege the sort of facts that the plaintiff in *Muldrow* was able to appropriately establish (i.e., having suffered an adverse employment action because of her protected category).

### a. The Supreme Court's decision in *Muldrow* was limited to claims of discrimination under Title VII.

In *Muldrow*, the Supreme Court held that Title VII's prohibition on "discriminat[ing] against" an individual "with respect to the terms or conditions of employment" does not require a showing that "the harm incurred was 'significant.'" *Id.* at 354-55 (cleaned up). While Baluja attempts to directly apply the holding in *Muldrow* to this case, he does not cite to any cases in which the holding in *Muldrow* has been applied to a claim of discrimination under USERRA, and the Supreme Court has cautioned that courts "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Indeed, the holding in *Muldrow* was not only limited to claims brought under Title VII, but it was also limited to claims of *discrimination* brought under Title VII. In fact, the Court in *Muldrow* expressly confined its reasoning to Title VII's anti-discrimination provision, while leaving intact "Title VII's separate anti-retaliation provision," which the Supreme Court acknowledged "applies only when the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm," 601 U.S. at 357; *see also*, *Hansen v. City of New York*, No. 24-CV-2808 (JMF), 2025 WL 588119, at *7 (S.D.N.Y. Feb. 24, 2025) (noting that Title VII's anti-retaliation provision is the "exact same adverse action standard that applies to retaliation claims under USERRA").

Without implying that Baluja's claim is one for retaliation, his pleadings are less than clear to what extent he attempts to argue having been retaliated against under USERRA:

> **COUNT I- UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT OF 1994 ("USERRA"), AS AMENDED, 38 U.S.C. §§ 4301 *ET SEQ.*; DISCRIMINATION AND REPRISAL PURSUANT TO 38 U.S.C. §§ 4311, 4312**

[DE 14 at pg. 9 (Count I), Case 2].[4]  Baluja even argued in his Response to the City's Motion to Dismiss Baluja's Third Complaint that his Third Complaint "describes detailed, repeated, and **retaliatory conduct** by [the City] that deprived him of

---

[4] "Reprisal" is defined as "[a]ny act or instance of retaliation, as by an employer against a complaining employee." Black's Law Dictionary (12th ed. 2024).

employment benefits, subjected him to adverse actions, and violated federal law."

[DE 23 at 1, Case 2] (emphasis added).

Given Baluja's failure to raise this argument below, the lack of case law in support of his position that *Muldrow* applies to USERRA claims, and the inexplicit manner in which he pleaded his claim, his argument should be rejected and the District Court's decision should be affirmed.

### b. The clear facts in *Muldrow*, wherein she was transferred, are not the same as inexplicit facts alleged by Baluja.

Even assuming that Baluja's claim is primarily one for discrimination, and even if the holding in *Muldrow* did apply to claims of discrimination under USERRA, that decision did not change the fact that a plaintiff must still appropriately allege non-conclusory facts supporting discrimination (which Baluja has failed to do (*see*, pg. 38-48, *supra*)), and must still "show some harm respecting an identifiable term or condition of employment." *Id.* at 354-55.

In *Muldrow*, the "parties agree[d]" that the plaintiff had been transferred, and that the "transfer implicated 'term' and 'conditions' of Muldrow's employment." *Muldrow*, 601 U.S. at 347-48. The Supreme Court also determined that the plaintiff being transferred resulted in injuries related to the reduction of her responsibilities, the irregularity of her new schedule, and the loss of her take-home car. *Id.* at 359. In his concurring opinion, Justice Kavanaugh succinctly explained the crux of the

holding: "even when **a transfer** does not change an employee's compensation, **a transfer** does change the employee's terms, conditions, or privileges of employment." *Id* at 363 (Kavanaugh, J., concurring) (emphasis added).

Here, despite repeatedly arguing that he was transferred in his Initial Brief, Baluja <u>never</u> alleged having been "transferred" in his Third Complaint. (*See*, pg. 30, *supra*). Instead, Baluja alleged that he was removed from the SWAT team and Marine Patrol Unit. [DE 14 at ¶¶21, 22, 42, Case 2]. Baluja does not clearly allege how that is a reduction in his responsibilities and, as explained above, he fails to provide any details regarding whether other employees (including those on leaves of absences) were treated more favorably than him. These facts are fatal to Baluja's USERRA claim because, outside of the context of retaining the same seniority (which Baluja has never argued), USERRA only entitles employees "'to such other rights and benefits not determined by seniority **as are generally provided by the employer**[.]" *Fannin*, LLC, 392 F. App'x at 789 (emphasis added)); (*see also*, pg. 43-44, *supra*).

Ultimately, Baluja fails to identify the sort of harm that the Supreme Court in *Muldrow* found to have affected the terms and conditions of that plaintiff's employment. *Muldrow*, 601 U.S. at 363 (Kavanaugh, J., concurring) ("The only question then is whether the relevant employment action changes the compensation, terms, conditions, or privileges of employment. A **<u>transfer</u>** does so. Therefore . . . **a**

55

**transfer on the basis of race, color, religion, sex, or national origin is actionable under Title VII.**") (emphasis added). As such, the Court should affirm the District Court's decision.

## IV.   DISMISSAL WITH PREJUDICE WAS APPROPRIATE.

In this case, Baluja had three opportunities to state a claim under USERRA, while being educated on the deficiencies in his complaints through the City's three motions to dismiss. The District Court also warned Baluja in its order granting the City's Motion to Dismiss Baluja's Second Complaint that he did "not make clear which alleged injuries have or have not been addressed by the City." [DE 13 at 3, Case 2].

Yet, Baluja's final complaint fared no better than those before it, and left the District Court with the difficult task of sorting through the contradictory allegations in his complaints. Ultimately, Baluja was unable to adequately explain what redressable injuries he had that had not already been addressed by the City.

As such, dismissal of Baluja's unclear, and often contradictory, allegations was necessary.

## CONCLUSION

For the foregoing reasons, the Court should affirm.

No. 25-13258
*Michael Baluja v. City of Coral Gables*

Respectfully submitted this March 10, 2026,

**RUIZ TRIAL LAW, PLLC**

*/s/ Fabian A. Ruiz*
Fabian A. Ruiz, Esq.
Florida Bar No.: 117928
fabian@ruiztriallaw.com
9100 S. Dadeland Blvd., Suite 1500
Miami, Florida 33156
Telephone: (866) 784-9247
Facsimile: (866) 487-2599
*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains <u>12,932</u> words, excluding the parts of the brief exempted by Federal Rules of Appellate Procedure.

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in 14-point proportionally spaced Times New Roman typeface.

*/s/ Fabian A. Ruiz*
*Counsel for Appellee*

57

No. 25-13258
*Michael Baluja v. City of Coral Gables*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 10th day of March, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in a manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Fabian A. Ruiz*
*Counsel for Appellee*

### SERVICE LIST
Andrew T. Tutt
John V. Hoover
ARNOLD & PORTER
KAY SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
andrew.tutt@arnoldporter.com
jack.hoover@arnoldporter.com
*Counsel for Appellant*